IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DAVID BROWN, | ) Civ. No. 07-00556 ACK-LEK |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| MELANIE CHINEN, BOB AWANA, | ) |
| LAURA THIELEN, PETER YOUNG, | ) |
| ROBERT MASUDA, NANCY MCMAHON, | ) |
| MELISSA KIRKENDALL, ASHLEY | ) |
| CHINEN, DOES 1-20, AND STATE OF | ) |
| HAWAII, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

**ORDER GRANTING: (1) DEFENDANTS MELANIE CHINEN, BOB AWANA, LAURA THIELEN, PETER YOUNG, ROBERT A. MASUDA, NANCY MCMAHON AND MELISSA KIRKENDALL, IN THEIR OFFICIAL CAPACITIES AND STATE OF HAWAII'S MOTION TO DISMISS; (2) DEFENDANTS BOB AWANA, LAURA THIELEN AND PETER YOUNG'S MOTION TO DISMISS; (3) DEFENDANTS MELANIE CHINEN AND ROBERT MASUDA'S MOTION TO DISMISS;(4) DEFENDANT ASHLEY CHINEN'S MOTION TO DISMISS; AND (5) PLAINTIFF THIRTY DAYS LEAVE TO AMEND THE COMPLAINT**

**PROCEDURAL BACKGROUND**

On November 7, 2007, David Brown ("Plaintiff") filed a Complaint ("Complaint") in the United States District Court for the District of Hawaii against Bob Awana ("Awana"), Laura Thielen ("Thielen"), Peter Young ("Young"), Robert A. Masuda ("Masuda"), Nancy McMahon ("McMahon"), Dr. Melissa Kirkendall ("Kirkendall"), and Does 1-20, in their official and individual capacities, Ashley Chinen ("A. Chinen"), in her individual capacity, and the

1

State of Hawaii ("State") (collectively, "Defendants").

The Complaint is 44 pages, has 202 paragraphs, 5 exhibits and alleges the following claims: (1) a 42 U.S.C. § 1983 claim alleging violation of Plaintiff's First Amendment rights as applicable to the states through the Fourteenth Amendment; (2) a 42 U.S.C. § 1983 claim alleging violation of Plaintiff's Fourteenth Amendment right to substantive and procedural due process; (3) a federal and Hawaii state law claim for the negligent management and handling of human remains against the State and M. Chinen; (4) a Hawaii state law claim for the negligent hiring, training and supervision against the Department of Land and Natural Resources ("DLNR") under a theory of respondeat superior; (5) a Hawaii state law claim for intentional and negligent infliction of emotional distress against M. Chinen, Young and Masuda and Does 1-20; (6) a Hawaii state law claim for defamation against M. Chinen, McMahon, Kirkendall and A. Chinen; (7) a Hawaii state law claim for conspiracy to defame against M. Chinen, McMahon, Kirkendall, A. Chinen and Does 1-20; (8) a Hawaii state law claim for conspiracy to coerce to violate laws, ethics and standard against M. Chinen, Awana, Thielen and Does 1-20; and (9) a Hawaii State law claim for retaliation against the State, M. Chinen, Awana, Thielen, Young, Masuda and Does 1-20.[1]

---

[1]  Plaintiff has voluntarily withdrawn his claims under 42 U.S.C. § 2000(e) ("Title VII") and all claims under 42 U.S.C. §§ 1981, 1985 and 1986.

On February 13, 2008, Defendants Awana, Thielen and Young, in their individual capacities, filed a Motion to Dismiss. On February 19, 2008, the State and Defendants, in their official capacities, filed a Motion to Dismiss.  On February 26, 2008, Defendants M. Chinen and Masuda, in their individual capacities, filed a Motion to Dismiss.  On March 5, 2008, Defendant A. Chinen filed a Motion to Dismiss.

On April 3, 2008, Plaintiff filed an Opposition to Defendants, Awana, Thielen, Young, M. Chinen and Masuda's Motion to Dismiss, an Opposition to Official Capacity Defendants' and State of Hawaii's Motion to Dismiss ("Opposition"), and an Opposition to A. Chinen's Motion to Dismiss ("A. Chinen's Opposition").

On April 10, 2008, the State and Defendants, in their official capacities, filed a Reply in Support of their Motion to Dismiss.[2]  On April 11, 2008, Awana, Thielen, Young, M. Chinen and Masuda, in their individual capacities, filed a Reply Memorandum in Support of their respective Motions to Dismiss.[3]

## FACTUAL BACKGROUND

On September 16, 2005, the State hired Plaintiff as the

_____

[2]  On April 11, 2008 and April 12, 2008, the State and Defendants in their official capacities filed two Erratas to the Reply in Support of their Motion to Dismiss.

[3]  Defendants filed thirteen Statements of No Opposition to the four Motions to Dismiss.

Branch Chief Archeologist for the State Historic Preservation Division ("SHPD").  See Compl. ¶ 23; Compl. Ex A.  Plaintiff's employment with SHPD ended on June 30, 2006.  Plaintiff alleges that the State chose not to renew his contract because he voiced a number of concerns and raised objections to his direct supervisor, M. Chinen,[4] about numerous procedures which "violated legal and ethical obligations" of the State, SHPD and its employees.[5]  See Compl. ¶¶ 2, 25, 27, 30, 34-38, 40-44 and page 38.

Plaintiff contends that on May 15, 2006, M. Chinen "fast-tracked" approval of a grubbing and grading permit in Kaloko Heights.  According to Plaintiff, M. Chinen demanded that Plaintiff write a letter approving the grubbing and grading around Kaloko Heights.  Plaintiff objected to writing the letter because Kaloko Heights is known to be rich in archeological

---

[4]  At all times relevant to the Complaint, M. Chinen was employed by the State as the as the administrator of SHPD.

[5]  Specifically, Plaintiff alleges that Plaintiff raised objections about whether procedures were properly being followed in the "Superferry" project.  See Compl. ¶ 30(a).  Plaintiff made complaints about SHPD's failure to have a SHPD-trained archeologist on the "Walmart" project.  See Compl. ¶ 30(b).  Plaintiff objected to M. Chinen about the improper approval of the archeological survey on the "General Growth Properties" project. See Compl. ¶ 30(c).  Plaintiff objected to the speedy permit approvals in the "Hokulia" and "Turtle Bay" projects because of the high density and frequency of archeological resources in those areas.  See Compl. ¶ 30(d) & (e).  Finally, Plaintiff alleges that he complained about the condition of the archeological library at SHPD.  See Compl. 36-37.

features.

In addition, Plaintiff asserts that M. Chinen stalled approval of certain development permits.  Plaintiff states that on three occasions M. Chinen asked him to perform archeological surveys in areas of possible development.  When Plaintiff determined there were no archeological features in those areas, and recommended development approval, M. Chinen continued to delay those projects causing financial harm to the developer.

On June 1, 2006, M. Chinen held a meeting with Plaintiff, and her administrative assistant, Tim Lee.  At the meeting, Plaintiff alleges that M. Chinen stated that she "received complaints from all of [Plaintiff's] staff, the private archaeology community, and the Hawaiian community."  See Compl. Ex. B.  In addition she allegedly said, that "the complaints stemmed from his changing policy single-handedly and inconsistently applying [those] changes."  See Compl. ¶ 91.  M. Chinen subsequently drafted a memo to Plaintiff's file detailing this conversation.  See Compl. Ex. B.

Also, on June 1, 2006, Plaintiff claims that McMahon[6] made comments that Plaintiff was part of a deceitful scheme to seek revenge against M. Chinen and to defraud the State.  See Compl. ¶ 109.

_____

[6]  At all times relevant to the Complaint, McMahon was employed by the State as an Archeologist in the Kauai department of SHPD.

Plaintiff's contract with SHPD expired on June 30, 2006.

On December 9, 2006, Kirkendall[7] sent a letter to Charles Bayne, M. Chinen and various others throughout the SHPD accusing Plaintiff of behaving unprofessionally as a manager, denigrating staff and creating a demoralizing workplace.  See Compl. ¶ 108; Compl. Ex. E.

On April 20, 2007, Plaintiff alleges that M. Chinen made statements to the Honolulu Advertiser that were similar to the statements she made at the June 1, 2006 meeting.  See Compl. ¶ 93.

Also on April 20, 2007, Plaintiff contends that A. Chinen[8] published statements on an internet blog that called Plaintiff a "liar" and "devalued" Plaintiff's subsequent job for a recycling company.  See Compl. ¶ 110.

On August 9, 2007, in an interview with the Hawaii Tribune Herald, M. Chinen stated that she did not renew Plaintiff's contract because she was looking for "a better match for the requirements of the job."  See Compl. ¶ 100.  Moreover, during her interview, M. Chinen explained that Plaintiff's "statements are absolutely false, and that [she] was greatly

---

[7]  At all times relevant to the Complaint, Kirkendall was employed by the State as an Archeologist in the Maui department of SHPD.

[8]  A. Chinen is the daughter of M. Chinen.

offended," and that "[Plaintiff] had been accusing [her] of
things even when [Plaintiff] was employed [by SHPD]. [SHPD]
always had rules whether [Plaintiff] agrees with them or not."
Id.

## STANDARD OF REVIEW

**I.   Motion to Dismiss for Lack of Subject Matter Jurisdiction**

A court's subject matter jurisdiction may be challenged
under Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)").
"A party invoking the federal court's jurisdiction has the burden
of proving the actual existence of subject matter jurisdiction."
See Thompson v. McCombe, 99 F.3d 352, 353 (9th Cir. 1996).

On a Rule 12(b)(1) motion to dismiss for lack of
subject matter jurisdiction, the court is not "restricted to the
face of the pleadings, but may review any evidence, such as
affidavits and testimony, to resolve factual disputes concerning
the existence of jurisdiction." McCarthy v. United States, 850
F.2d 558, 560 (9th Cir. 1988).  "Once the moving party [converts]
the motion to dismiss into a factual motion by presenting
affidavits or other evidence properly brought before the court,
the party opposing the motion must furnish affidavits or other
evidence necessary to satisfy its burden of establishing subject
matter jurisdiction." Savage v. Glendale Union High Sch., 343
F.3d 1036, 1040 n.2 (9th Cir. 2003).

"The requirement that the nonmoving party present

evidence outside his pleadings in opposition to a motion to dismiss for lack of subject matter jurisdiction is the same as that required under Rule 56(e) that the nonmoving party to a motion for summary judgment must set forth specific facts, beyond his pleadings, to show that a genuine issue of material fact exists." Trentacosta v. Frontier Pac. Aircraft Indus., Inc., 813 F.2d 1553, 1559 (9th Cir. 1987).  When ruling on a jurisdictional motion involving factual issues which also go to the merits, the moving party "should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Casumpang v. Int'l Longshoremen's & Warehousemen's Union, 269 F.3d 1042, 1060-61 (9th Cir. 2001).

## II.  Motion to Dismiss For Failure to State A Claim Upon Which Relief Can Be Granted

Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") permits dismissal of a complaint that fails "to state a claim upon which relief can be granted."  Under Rule 12(b)(6), review is generally limited to the contents of the complaint. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Campanelli v. Bockrath, 100 F.3d 1476, 1479 (9th Cir. 1996).  Courts may also "consider certain materials - documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice - without converting the motion to dismiss into a motion for summary judgment." United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).

8

Documents whose contents are alleged in a complaint and whose authenticity are not questioned by any party may also be considered in ruling on a Rule 12(b)(6) motion to dismiss.  <u>See</u> <u>Branch v. Tunnell</u>, 14 F.3d 449, 453-54 (9th Cir. 1994).

On a Rule 12(b)(6) motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.  <u>Fed'n of African Am.</u> <u>Contractors v. City of Oakland</u>, 96 F.3d 1204, 1207 (9th Cir. 1996).  However, conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss.  <u>See Sprewell</u>, 266 F.3d at 988; <u>Nat'l Assoc. for the Advancement of Psychoanalysis v. Cal. Bd. of</u> <u>Psychology</u>, 228 F.3d 1043, 1049 (9th Cir. 2000); <u>In re Syntex</u> <u>Corp. Sec. Litig.</u>, 95 F.3d 922, 926 (9th Cir. 1996).  Moreover, the court need not accept as true allegations that contradict matters properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint.  <u>Sprewell</u>, 266 F.3d at 988.

In summary, to survive a Rule 12(b)(6) motion to dismiss, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  <u>Bell Atl. Corp. v. Twombly</u>, 127 S. Ct. 1955, 1965 (2007) (internal citations and quotations omitted).  "While

a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1964 (internal citations and quotations omitted).  Dismissal is appropriate under Rule 12(b)(6) if the facts alleged do not state a claim that is "plausible on its face." Id. at 1973.

## DISCUSSION

        The Court will begin its discussion by analyzing Plaintiff's federal claims.

**I.    § 1983 Claims**

        To state a claim under 42 U.S.C. § 1983, a plaintiff must allege:  (1) a violation of a right secured by the Constitution and laws of the United States; and (2) that the deprivation was committed by a person acting under color of law.[9]

---

        [9]  42 U.S.C. § 1983 states:

        Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except

See West v. Atkins, 487 U.S. 42, 48 (1988).

Plaintiff asserts that the SHPD's decision not to rehire him violated his constitutional rights. Plaintiff attacks the decision both in substance and procedure. First, Plaintiff alleges that the decision not to rehire him was punishment for speaking out against "illegal, unethical and culturally insensitive practices," and that the decision violated his right to freedom of speech under the First Amendment. See Compl. ¶ 186. Second, Plaintiff alleges that his Fourteenth Amendment substantive and procedural due process rights were violated because Defendants filed "false and pretextual allegations concerning Plaintiff's performance and false allegations of non existent policies. . ." See Compl. ¶ 188. The Court will first address these claims against the State and Defendants in their official capacities and then against the Defendants in their individual capacities.

**A.   § 1983 Claims against the State and Defendants in their Official Capacities**

**1.   Eleventh Amendment Immunity**

---

that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

The State and Defendants in their official capacities initially argue that the Eleventh Amendment immunizes them from Plaintiff's § 1983 claims.  The Eleventh Amendment to the United State Constitution provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subject of any Foreign State.

U.S. Const. amend. XI.

The State is not a "person" for § 1983 purposes.  <u>See Hafer v. Melo</u>, 502 U.S. 21, 25 (1991).  "A suit against a state official in his or her official capacity . . . is no different from a suit against the State itself."  <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 71 (1989); <u>see also Flint v. Dennison</u>, 488 F.3d 816, 824-25 (9th Cir. 2007).  The Eleventh Amendment generally bars lawsuits against the State and its employees in their official capacities.  <u>Id.</u>

The courts have recognized a vital exception to this general rule.  In <u>Ex parte Young</u>, 209 U.S. 123 (1908), the Supreme Court held that a suit for prospective relief provides a narrow exception to Eleventh Amendment immunity.  <u>See Flint</u>, 488 F.3d at 825; <u>Rounds v. Or. State Bd. of Higher Educ.</u>, 166 F.3d 1032, 1036 (9th Cir. 1999); <u>Doe v. Lawrence Livermore Nat'l Lab.</u>, 131 F.3d 836, 840 (9th Cir. 1997).  When sued for prospective

relief, a state official, in his official capacity, is not immunized from liability under the Eleventh Amendment.  <u>See</u> <u>Flint</u>, 488 F.3d at 825.

Thus, Plaintiff's claims seeking monetary or retrospective relief under § 1983 are barred.  The Court must now determine whether Plaintiff has properly alleged that he is seeking prospective injunctive relief for his § 1983 claims.

"In determining whether the doctrine of <u>Ex parte Young</u> avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'"  <u>See</u> <u>Verizon Md., Inc.</u> <u>v. Pub. Serv. Comm'n</u>, 535 U.S. 635, 645 (2002) (quoting <u>Idaho v.</u> <u>Coeur d'Alene Tribe of Idaho</u>, 521 U.S. 261, 296 (1997)); <u>see also</u> <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 465 U.S. 89, 105-06 (1984).

As a result of the alleged § 1983 constitutional violations, Plaintiff seeks an injunction in the form of reinstatement, instatement, promotion, or front pay in lieu of a job change.  <u>See</u> Compl. ¶ 186, pgs. 42-43.  "The prayer for injunctive relief - that state officials be restrained from enforcing an order in contravention of controlling federal law - clearly satisfies our 'straightforward inquiry.'"  <u>See</u> <u>Verizon</u> <u>Md., Inc.</u>, 535 U.S. at 645; <u>see also</u> <u>Flint</u>, 488 F.3d at 825

(holding that reinstatement constitutes prospective injunctive relief because wrongful discharge is a continuing violation). According to the Ninth Circuit:

> [The plaintiff's] reinstatement would not serve as compensation for any past harm, unlike a damages award. Reinstatement would not compensate [the plaintiff] for lost wages or lost time working.... Rather, reinstatement would simply prevent the prospective violation of [the plaintiff's] rights which would result from denying him employment in the future. If [the plaintiff] were reinstated, any salary received by him thereafter would have nothing to do with the alleged past violation. [The plaintiff] would be entitled to such salary solely for his work after reinstatement. Thus, while reinstatement would relate to the past violation, it would not amount to relief solely for the past violation.

Doe, 131 F.3d at 841; see also Maizner v. Dep't of Educ., 405 F.Supp.2d 1225, 1231 (D. Haw. 2005).  Plaintiff's § 1983 claims against the State and Defendants in their official capacities are properly characterized as seeking prospective injunctive relief and therefore are not barred by the Eleventh Amendment.[10]   The

_____

[10]  Plaintiff additionally argues that the State waived its liability under Monell v. New York City Dep't of Social Servs., 436 U.S. 658 (1978) because it utilized SHPD as a mechanism for illegal activity.  See Compl. ¶ 190.  In Monell the Supreme Court held that municipal corporations and similar governmental entities are "persons" subject to suit.  However, as the Supreme Court wrote in Will, "it does not follow that if municipalities are persons then so are states.  States are protected by the Eleventh Amendment while municipalities are not, and we consequently limited our holding in Monell to local government units which are not considered part of the State for Eleventh Amendment purposes."  See Will, 491 U.S. at 70.  Here, Plaintiff is suing the State and not a municipality.  Thus, Plaintiff cannot establish the State's waiver of immunity under Monell.

Court must now analyze the substance of Plaintiff's § 1983 claims seeking prospective injunctive relief.

### 2.   First Amendment Retaliation Claim under § 1983

Plaintiff alleges the Defendants decided to not rehire him in retaliation for his comments that SHPD conducted "illegal, unethical and culturally insensitive practices," and as a result Plaintiff's constitutional right to free speech was violated. Public employees suffer a constitutional violation when they are wrongfully terminated or disciplined for making protected speech. See Marable v. Nitchman, 511 F.3d 924, 929 (9th Cir. 2007).  To prove retaliation in violation of the First Amendment, "an employee must show (1) that he or she engaged in protected speech; (2) that the employer took 'adverse employment action'; and (3) that his or her speech was a 'substantial or motivating' factor for the adverse employment action." Coszalter v. City of Salem, 320 F.3d 968, 973 (9th Cir. 2003); see also Marable 511 F.3d at 929.  Defendants concede that, for the purposes of their motions to dismiss, the Complaint satisfies the second and third elements.  Defendants only argue that Plaintiff has insufficiently pled that he engaged in constitutionally protected speech.

Plaintiff's speech is only protected if he spoke "as a citizen upon matters of public concern" rather than "as an employee upon matters only of personal interest." Thomas v. City

15

of Beaverton, 379 F.3d 802, 808 (9th Cir. 2004) (quoting Roe v. City of San Diego, 356 F.3d 1108, 1112 (9th Cir. 2004); see also Connick v. Myers, 461 U.S. 138, 146-47 (1983).  To determine whether an employee's speech addresses a matter of public concern, a court must look to the content, form and context of a given statement.  See Connick, 461 U.S. 138 at 147-48.  If Plaintiff can establish a prima facie First Amendment claim for retaliation, the burden shifts to the employer to demonstrate either that the employer's legitimate administrative interests outweigh the employee's First Amendment rights or that the employer "would have reached the same decision even in the absence of the [employee's] protected conduct."  Thomas, 379 F.3d at 808 (quoting Ulrich v. City and County of San Francisco, 308 F.3d 968, 967-77 (9th Cir. 2002)).  "The inquiry into the protected status of speech is one of law, not fact."  Marable, 511 F.3d at 930 (quoting Connick, 461 U.S. at 148 n. 7).

     Here, Plaintiff alleges that during his nine month employment with SHPD, he objected to M. Chinen about procedures which violated legal and ethical obligations.  See Compl. ¶¶ 30, 37-39.  As noted above, Plaintiff's specific complaints about the handling of various projects were all made to his immediate supervisor, M. Chinen, and related to whether proper procedures were being followed.  The Court must analyze Plaintiff's speech and determine whether it is protected under the First Amendment.

In <u>Garcetti v. Ceballos</u>, 547 U.S. 410 (2006), the plaintiff, Richard Ceballos, was a calendar deputy in the Los Angeles County District Attorney's Office.  A defense attorney contacted Ceballos about inaccuracies in an affidavit used to obtain a search warrant and asked that Ceballos review the case.[11]  <u>Id.</u> at 413-14.  After an investigation, Ceballos determined that the affidavit contained misrepresentations and wrote a disposition memorandum to his superiors recommending that the case be dismissed.  <u>Id.</u> at 414.  Ceballos's supervisors decided to proceed with the prosecution despite his concerns.  <u>Id.</u>  As a result, Ceballos was asked to testify for the defense regarding his disposition memorandum.  <u>Id.</u> at 414-15.  When Ceballos was reassigned, transferred and denied a promotion, Ceballos sued his employer and supervisors for violation of his First Amendment right by retaliating against him for writing the disposition memorandum.  <u>Id.</u> at 415.  The Supreme Court held that "[s]o long as employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively."  <u>Id.</u> at 419 (citing <u>Connick</u>, 461 U.S. at 147 ("Our responsibility is to ensure that citizens are not deprived of fundamental rights by virtue of working for the government.")).

---

[11]  It was not unusual for defense attorneys to ask calender deputies to investigate aspects of pending cases.  <u>Garcetti</u>, 547 U.S. at 414.

Moreover, the Supreme Court explained that where an employee speaks pursuant to his official duties, the speech is not protected.  Id. at 421.  Therefore, Ceballos's speech did not qualify as "protected speech" because his disposition memorandum was written pursuant to his official duties.  Id.

Similarly, in Freitag v. Ayers, 468 F.3d 528 (9th Cir. 2006), cert. denied, 127 S.Ct. 1918 (2007), Deanna Freitag, a former correctional officer for the California Department of Corrections and Rehabilitation ("CDCR"), sued several CDCR administrators claiming they retaliated against her for engaging in constitutionally protected speech.  During her employment with the CDCR, Freitag submitted several incident reports detailing numerous encounters with inmates engaging in sexual exhibitionist behavior.  Id. at 533-534.  CDCR had allegedly disregarded Freitag's complaints.  Freitag complained to her prison warden, wrote letters to an associate warden and the director of the CDCR, complaining that her reports of inmate misbehavior were being ignored.  Id. at 533.  Freitag also complained to a California State Senator, who contacted the California Office of the Inspector General to initiate an investigation.  Id. at 535. Alleging that she suffered adverse employment actions motivated by her communications, Freitag brought her First Amendment claim. Id.  Applying Garcetti, the Ninth Circuit held that the communications with the California State Senator were protected

under the First Amendment, but that the internal reports were
communications that were not constitutionally protected.  Id. at
545.  Specifically, the internal complaints were made "pursuant
to [Freitag's] official duties" as a correctional officer.  Id.

Likewise, in Marable, 511 F.3d 924, Ken Marable, an
engineer for the Washington State Ferries ("WSF"), observed and
reported corrupt practices of WSF management participating in
overtime and "special projects" schemes to supplement their pay.
Id. at 927.  Specifically, Marable complained to the Chief
Executive Officer of WSF, had two conversations about the corrupt
practices with an outside auditor and complained to a state
ethics board.  Id.  Marable alleged that as a result of his
complaints, disciplinary action was taken against him.  Id.  The
Ninth Circuit noted that "an employee's charge of high level
corruption in a government agency has all the hallmarks that we
normally associate with constitutionally protected speech."  Id.
at 932.  Interpreting Freitag, the court in Marable explained
that "the conclusion that Freitag's preparation of internal forms
was pursuant to her official duties was not reached merely
because these forms were internal. "  Id.   Instead, the court
explained, part of Freitag's job was to critique inmates.  The
distinction between the unprotected comments made in Freitag and
the protected comments made in Marabale is that in Marable, the
plaintiff's complaints related to his superiors' "corrupt over

payment schemes" which fell outside his official duties.  Id.

Here, as Branch Chief Archeologist, Plaintiff was responsible for initiating, formulating and recommending "policies which affect the immediate activities of the archeological branch."  See Compl. Ex. A.  Part of Plaintiff's job description was to develop proposals for the long and short term goals and objectives of the historic preservation in Hawaii. Id.  In addition, Plaintiff was required to devise a strategy that systematically prioritized the statewide survey of archeological properties.  Id.

Plaintiff's complaints and objections are most like Freitaq, where the plaintiff's communication about her supervisors' actions related to her official duties.  In this case, as in Garcetti, part of Plaintiff's "official duties" as Branch Chief Archeologist were to make the type of objections he alleges in the Complaint.  Plaintiff argues that Marable stands for the proposition that a formal job description is insufficient to demonstrate that a task is within the scope of the employee's professional duties for First Amendment purposes.  See Marable, 511 F.3d at 932.  In addition, Plaintiff argues that Garcetti held that speech made within the office is not dispositive as to whether the speech is protected under the First Amendment. Garcetti, 547 U.S. at 420-21.  While not dispositive, the Court finds it instructive that Plaintiff only made his objections to

his supervisor, M. Chinen.   More importantly however, the Court
finds that Plaintiff's objections and complaints as stated in the
Complaint were functionally within the requirements of his job
and were made pursuant to his official duties.   While Plaintiff
alleges that there was a course and practice of illegal activity
at the SHPD, the actual speech Plaintiff alleges he made in the
Complaint about that conduct fell within his job
responsibilities, making his speech akin to the unprotected
speech in <u>Freitag</u> and <u>Garcetti</u>.

Thus, the Court dismisses Plaintiff's First Amendment
retaliation claim under § 1983 against the State and Defendants
in their official capacities that seek injunctive relief for
reinstatement, instatement, promotion or front pay in lieu of a
job change.

### 3.   Fourteenth Amendment Substantive and Procedural Due Process Claims under § 1983

Plaintiff alleges that the SHPD's decision not to
rehire him infringed on his Fourteenth Amendment right to
substantive and procedural due process.   For Plaintiff to
adequately allege a violation of his substantive due process
rights under § 1983 he must allege that the government deprived
him of life, liberty or property in such a way that "shocks the
conscience" or "interferes with rights implicit in the concept of
ordered liberty."   <u>See</u> <u>Nunez v. City of Los Angeles</u>, 147 F.3d
867, 871 (9th Cir. 1998).   However, "[t]o establish a substantive

21

due process claim, a plaintiff must, as a threshold matter,
[allege] a government deprivation of life, liberty, or property."
Id.

     To state a procedural due process claim under § 1983
Plaintiff must allege "(1) a liberty or property interest
protected by the Constitution; (2) a deprivation of the interest
by the government; [and] (3) lack of process."   Portman v.
County of Santa Clara, 995 F.2d 898, 907 (9th Cir. 1992); see
also Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 569-
70 (1972); McRorie v. Shimoda, 795 F.2d 780, 786 (9th Cir. 1986).
Here, the State and Defendants in their official capacities only
contest whether Plaintiff has sufficiently alleged an actual
property or liberty interest sufficient to state either a
substantive or procedural due process claim.

              a.   Property Interest

     To have a property interest in a benefit, Plaintiff
must allege that he had more than "an abstract interest or desire
for it."  Roth, 408 U.S. at 577.  Plaintiff only has a
constitutionally protected property interest in his continued
employment if he has a "reasonable expectation or a 'legitimate
claim of entitlement' to it, rather than a mere 'unilateral
expectation.'"  See Brady v. Gebbie, 859 F.2d 1543, 1548 (9th
Cir. 1988), cert. denied, 489 U.S. 1100 (1989) (quoting Roth, 408
U.S. at 577); see also Mathews v. Or. State Bd. of Higher Educ.

22

ex rel. Univ. of Or., 220 F.3d 1165, 1168 (9th Cir. 2000).

Legitimate claims of entitlement are created by existing rules or understandings that stem from an independent source such as state laws, statutes, ordinances, regulations or express or implied contracts.  Roth, 408 U.S. 577.

Here, it is undisputed that Plaintiff's contract with the State clearly ended on June 30, 2006.  The terms of Plaintiff's appointment secured no interest in re-employment for the next year.  Thus, the terms of the Plaintiff's appointment secured no property interest in employment after the expiration of his contract.  Id.; see also Brady, 859 F.2d at 1548 ("Where state employees serve at will of the appointing authority . . . there is no such reasonable expectation of continued employment and thus no property right.").  Additionally, with regard to the substantive due process claim, the declination of rehiring Plaintiff did not "shock[] the conscience" or "interfere[] with rights implicit in the concept of ordered liberty."  See Nunez, 147 F.3d at 871.  Accordingly, Plaintiff did not have a property interest in his continued employment with SHPD.

### b.   Liberty Interest

"A liberty interest is implicated in the employment termination context if the charge impairs a reputation for honesty or morality."  Brady, 859 F.2d at 1552 (quoting Mathews v. Harney County Or. Sch. Dist. No. 4., 819 F.2d 889, 891 (9th

Cir. 1987).  More specifically, a liberty interest is implicated if a decision not to rehire Plaintiff was accompanied by "any charge against him that might seriously damage his standing and associations in his community" or "imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities."  Roth, 408 U.S. at 573; see also Ulrich, 308 F.3d at 982; Portman v. County of Santa Clara, 995 F.2d 898, 907 (9th Cir. 1992) ("To implicate constitutional liberty interests . . . the reasons for dismissal must be sufficiently serious to 'stigmatize' or otherwise burden the individual so that he is not able to take advantage of other employment opportunities." (internal quotation marks omitted)). Charges that carry a stigma of moral turpitude, such as dishonesty and immorality, "may implicate a liberty interest, but charges of incompetence or inability do not amount to charges of moral turpitude."  Portman, 995 F.2d at 907 (quoting  Wheaton v. Webb-Petett, 931 F.2d 613, 617 (9th Cir. 1991).

"Out of concern that the Fourteenth Amendment not become 'a font of tort law to be superimposed upon whatever systems may already be administered by the States,'" soon after Roth the Supreme Court held that injury to reputation alone is insufficient to establish the deprivation of liberty interest protected by the Constitution.  See Ulrich, 308 F.3d at 982 (quoting Paul v. Davis, 424 U.S. 693, 701 (1976)).  The Supreme

24

Court has held that governmental actions that defame an individual must also be performed "in the course of declining to rehire him." Paul, 424 U.S. at 701. This rule became known as the "stigma plus" test for establishing the deprivation of a liberty interest based on defamation. Ulrich, 308 F.3d at 982.

Thus, the Court must first determine whether statements alleged by Plaintiff in the Complaint sufficiently stigmatized Plaintiff. Portman, 995 F.2d at 907. Second, the Court must determine whether the allegedly defamatory statements were made "in the course of" the refusal to rehire Plaintiff. See Roth, 408 U.S. at 573, Portman, 995 F.2d at 907; see also Ulrich, 308 F.3d at 983.

A state's accusations against an employee do not implicate an infringement of constitutional liberty interests unless they seriously damage his community standing and associations or foreclose his freedom to pursue other employment. See Wheaton, 931 F.2d at 617; see also Roley v. Pierce County Fire Protection Dist. No. 4, 869 F.2d 491, 495 (9th Cir. 1989). However, it is the nature of the charges, not the actual consequences that determines whether they implicate a liberty interest. Id. Here, the comments made by M. Chinen and Kirkendall, do not cause a stigma of moral turpitude, but were simply comments about Plaintiff's incompetence and inability. Plaintiff's case is akin to Roley, 869 F.2d at 495.

25

In Roley, the plaintiff's employer presented Roley with a memorandum listing eleven areas of unsatisfactory performance, which Roley contested.  Id. at 492.  A public meeting was held to consider the charges against him.  Id.  The court held that the charges against Roley focused on his lack of competence as a fire chief and his ability to get along with and to manage others.[12] Id. at 495.

Plaintiff alleges that Kirkendall, a subordinate of Plaintiff, sent M. Chinen and others in SHPD a letter accusing Plaintiff of behaving unprofessionally when interacting with Kirkendall and creating a demoralizing workplace.  See Compl. ¶ 108; Compl. Ex. E.  More specifically, Kirkendall explained in the December 9, 2006 letter that Plaintiff did not engage the staff, changed procedures that slowed progress and resisted subordinate assistance.  See Compl. Ex. E.  This letter did not attach a stigma of moral turpitude to Plaintiff.  See Roley, 869 F.2d at 495.  The same can be said about M. Chinen's comments on

---

[12] Those charges included: failure to provide leadership, failure to provide active and constructive management, failure to properly supervise, failure to stimulate and maintain proper attitude and morale, failure to follow through with idea and objectives, failure to show improvement in communications with volunteer and part time officers, failure to properly supervise personnel, failure to follow through with volunteer driver's license policy, a finding that Roley's actions resulted in a grievance filed by the district secretary, antagonism toward his employer by putting his own interests above his employer's, and failure to keep pace with required managerial development. Roley, 869 F.2d at 495.

26

June 1, 2006.  The worst of the comments made at that meeting and subsequently to the Honolulu Advertiser were that she "received complaints from all of [Plaintiff's] staff, the private archaeology community, and the Hawaiian community."  See Compl. Ex. B.  Moreover, M. Chinen's comments on August 9, 2007 to the Hawaii Tribune Herald related to Plaintiff's inept performance at SHPD and his inability to do his job properly.[13]  As in Roley, Plaintiff's charges do not rise to the level of defamatory statements that cause a stigma of moral turpitude on Plaintiff.

Even if the Court were to determine that the comments made by M. Chinen, Kirkendall, McMahon, and A. Chinen did sufficiently stigmatize Plaintiff to implicate a constitutional violation, the Court would still have to analyze whether the allegedly defamatory statements were made "in the course of declining to rehire him."  Paul, 424 U.S. at 701.  "This element does not require a strict temporal link between the defamation and the nonrenewal or discharge; rather, the alleged defamatory statement must be 'so closely related to the discharge from

---

[13] As noted above, the Complaint alleges that in an interview with the Hawaii Tribune Herald, M. Chinen stated that she did not renew Plaintiff's contract because she was looking for "a better match for the requirements of the job."  See Compl. ¶ 100.  Moreover, during her interview with the Hawaii Tribune Herald, M. Chinen explained that Plaintiff's "statements are absolutely false, and that [she] was greatly offended," and that "[Plaintiff] had been accusing [her] of things even when [Plaintiff] was employed [by SHPD]. [SHPD] always had rules whether [Plaintiff] agrees with them or not."  Id.

employment that the discharge itself becomes stigmatizing in the public eye.'" Ulrich 308 F.3d at 983 (quoting Campanelli, 100 F.3d at 1482).  While there is no bright-line rule, there must be some temporal nexus between the defamatory statements and the decision to not rehire because at some point the defamatory statements become too remote in time to be considered in the course of declining to rehire.  See Campanelli, 100 F.3d at 1483

Here, while it is conceivable that M. Chinen's June 1, 2006 comments were made in the course of declining to rehire Plaintiff, it is clear that the comments allegedly made by A. Chinen, Kirkendall, McMahon, and the comments made by M. Chinen on April 20, 2007 and August 9, 2007, were not made in the course of declining to rehire Plaintiff.

On April 20, 2007, A. Chinen allegedly made defamatory statements against Plaintiff.  A. Chinen is not employed by the State and her comments were made ten months after the SHPD declined to rehire Plaintiff.  A. Chinen's alleged comments were completely unrelated to the SHPD's decision not to rehire Plaintiff.  In addition, M. Chinen's April 20, 2007 and August 9, 2007 statements were made approximately ten and thirteen months after the decision not to rehire Plaintiff had been made.  These comments are distinguishable from Ulrich, where the defamatory statements were made five days after the termination and Campenelli, where the defamatory statements were made seven days

28

after discharge.  The Court finds these statements are far too remote to have any temporal nexus to the nonrenewal of Plaintiff's employment contract.  See Ulrich 308 F.3d at 983.

The comments made by both Kirkendall and McMahon were similarly unrelated to the SHPD's decision not to rehire Plaintiff.  Both Kirkendall and McMahon were subordinate to Plaintiff and Kirkendall's comments were made nearly five months after the SHPD declined to rehire him.  These were not comments or charges by an employer, but rather, by subordinate co-employees.  While McMahon's statements were made on June 1, 2006, she is Plaintiff's subordinate and the comments were made 30 days before the SHPD declined to rehire Plaintiff.  Therefore, Kirkendall's comments are also too removed to fall within the temporal nexus of the decision not to renew Plaintiff's contract and the Court further finds that both Kirkendall and McMahon's comments were not made during the course of that decision.  Id.

Plaintiff has failed to allege a liberty interest that would entitle him to substantive or procedural due process because he has failed to allege a violation of a constitutionally cognizable property or liberty interest.  Moreover, regarding the substantive due process claim, M. Chinen and Kirkendall's statements clearly do not "shock[] the conscience" or "interfere[] with rights implicit in the concept of ordered liberty."  See Nunez, 147 F.3d at 871.

Thus, the Court dismisses Plaintiff's Fourteenth Amendment substantive and procedural due process claims under § 1983 against the State and Defendants in their official capacities that seek injunctive relief for reinstatement, instatement, promotion or front pay in lieu of a job change.

**B.    § 1983 Claims against Defendants in their individual Capacities**

Plaintiff makes the same § 1983 claims against Defendants in their individual capacities as he did against the State and Defendants in their official capacities.  Personal-capacity suits seek to impose individual liability upon governmental officials for actions taken under the color of state law.  See Hafer, 502 U.S. at 25-26.  Therefore, to establish personal liability on a § 1983 claim, Plaintiff must allege "that the official, acting under color of state law, caused the deprivation of a federal right."  Kentucy v. Graham, 473 U.S. 159, 166 (1985).  As noted supra, the Court finds that Plaintiff has failed to state a cause of action for its § 1983 claims because it has failed to allege that he has been deprived of a federal right.  Thus, Plaintiff's claims against Defendants in their individual capacities must be dismissed as well.

Alternatively, the Court dismisses the § 1983 claims

against Defendants Masuda,[14] Young,[15] Awana[16] and Thielen[17] because

no theory of respondeat superior is available in this case.  <u>See</u>

<u>Jones v. Williams</u>, 297 F.3d 930, 934 (9th Cir. 2002).  "A

supervisor may be liable under § 1983 only if there exists either

(1) his or her personal involvement in the constitutional

deprivation, or (2) a sufficient causal connection between the

supervisor's wrongful conduct and the constitutional violation."

<u>Jeffers v. Gomez</u>, 267 F.3d 895, 915 (9th Cir. 2001).  In other

words, supervisors "can be held liable 'only if they play an

affirmative part in the alleged deprivation of constitutional

rights,' [i.e. by] 'sett[ing] in motion a series of acts by

others ..., which he knew or reasonably should have known, would

cause others to inflict constitutional injury.'"  <u>Graves v. City</u>

<u>of Coeur D'Alene</u>, 339 F.3d 828, 848 (9th Cir. 2003) (internal

citations omitted) (quoting <u>Rise v. Oregon</u>, 59 F.3d 1556, 1563

(9th Cir. 1995).

     As noted <u>supra</u>, the Court finds that there has been no

---

[14]  At all times relevant to the Complaint, Masuda was employed by the State as the Deputy Director of the DLNR.

[15]  At all times relevant to the Complaint, Young was employed by the State as the Chairperson for the DLNR.

[16]  At all times relevant to the Complaint, Awana was employed by the State as the Chief of Staff for Governor Linda Lingle, Governor of Hawaii.

[17]  At all times relevant to the Complaint, Thielen employed by the State as the Director of Office of Planning.

violation of Plaintiff's constitutional rights under the First or Fourteenth Amendments.  Moreover, M. Chinen as the decisionmaker was the alleged wrongdoer, so respondeat superior liability would not be applicable to her.  Plaintiff has failed to assert that Defendants Masuda, Young, Awana and Thielen played an affirmative part in the alleged deprivation of Plaintiff's constitutional rights.  Thus, Plaintiff's § 1983 claims against Defendants Masuda, Young, Awana and Thielen are alternatively dismissed because Plaintiff has failed to establish respondeat superior liability.

## II.  Violation of the Native American Graves and Repatriation Act ("NAGPRA")

Next, Plaintiff claims that the State has violated NAGPRA.[18]  Plaintiff seeks an injunction against the State from continuing its illegal practices.  Plaintiff never actually alleges that the SHPD is continuing to violate NAGPRA.  Instead, Plaintiff vaguely refers to NAGPRA in paragraph 27 of the Complaint which states:

> When Plaintiff took the job he was aware that SHPD had ongoing problems to include unequal treatment of developers, unethical acceptance of money, failure to safeguard artifacts in custody, and loose management of personal [sic] allowing them to routinely misuse sick

---

[18] NAGPRA is a federal law that sets forth the notification and inventory procedures for Native American cultural objects and burial remains unearthed on federal lands.  See 25 U.S.C. §§ 3001 – 3006.

leave and overtime (see exhibit C).

See Compl. ¶ 27.  "Exhibit C" of the Complaint is an audit summary from December 2002 ("2002 Audit Summary"), which explains that the SHPD's inventory of human skeletal remains is piecemeal and does not routinely provide geographical information required by NAGPRA.  The 2002 Audit Summary explains that the inadequate inventory of human remains coupled with inadequate storage "makes it difficult for the division to account for all remains and to ensure their timely re-interment."  See Compl. Ex. C.

At the hearing on April 21, 2008, the Court asked Plaintiff to clarify this claim and his only response was that he thought that the Complaint's reference to the 2002 Audit Summary was sufficient to put the government on notice that it was violating federal laws.  The Court finds that Plaintiff's reference to the 2002 Audit Summary is, at best, an allegation that the State violated NAGPRA in 2002 and not an allegation of an ongoing violation of a federal law.  Thus, the Eleventh Amendment bars Plaintiff's second and final remaining federal law claim.  See Flint, 488 F.3d at 825.

## III. Supplemental Jurisdiction

The remaining claims against Defendants are all state law claims.  The Court will first address the pendent state law claims against the State and Defendants in their official

33

capacities and then address the pendent state law claim claims against the Defendants in their individual capacities.

A.   **State Law Claims against the State and Defendants in their Official Capacities**

The State and Defendants in their official capacities argue that all the State law claims against them should be dismissed because the Eleventh Amendment "precludes the adjudication of pendent state law claims against nonconsenting state defendants in federal courts." Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 973-74.  As the Supreme Court has held:

> A federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law. On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment. We conclude that *Young* and *Edelman* are inapplicable in a suit against state officials on the basis of state law.

Pennhurst, 465 U.S. at 106.

Plaintiff seeks damages against the State and Defendants in their official capacities under HRS § 662-2 for negligent management and handling of human remains and negligent hiring, training and supervision.  In addition, Plaintiff seeks damages under the Whistleblowers' Protection Act as codified by

34

HRS § 378-62.  Because the State has not consented to be sued for these instant state law claims in federal court, it is immune to such claims.  See Maizner, 405 F.Supp.2d at 1232 (noting that the State has not consented to be sued under HRS § 662 in federal court).[19]  Thus, the Court dismisses Plaintiff's state law claims against the State and Defendants in their official capacities as well.

### B.    State Law Claims against Defendants in their Individual Capacities

Plaintiff asks the Court to exercise supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367.  Supplemental jurisdiction over state law claims exists when "a federal claim is sufficiently substantial to confer jurisdiction and there is 'a common nucleus of operative fact between the state and federal claims.'"  See Maizner, 405 F.Supp.2d at 1241 (quoting Brady v. Brown, 51 F.3d 810, 816 (9th Cir. 1995).  Once it is determined that a state law claim arises out of a common nucleus of operative facts, a district court may nevertheless decline jurisdiction a state law claim if: "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which

---

[19]  A review of HRS § 378-62, its legislative history and relevant case law has not revealed any indication that the State has waived its immunity to be sued under this statute in federal court.

the district court has original jurisdiction,(3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." See 28 U.S.C. § 1367.  Supplemental jurisdiction is a doctrine of discretion, not of Plaintiff's right.  See City of Chicago v. Int'l College of Surgeons, 522 U.S. 156, 172; United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966).

Here, the Court declines to exercise supplemental jurisdiction over Plaintiff's claim because it has dismissed all claims over which it had original jurisdiction.  However, the Court will address A. Chinen's claim separately because it declines to exercise jurisdiction for a separate reason.

Plaintiff makes a claim against A. Chinen for allegedly making defamatory comments on an internet blog nearly ten months after Plaintiff was terminated from his employment with the State.  Plaintiff alleges that these facts are within a common nucleus of operative facts of his termination because the statements were "designed to ensure that Plaintiff David Brown was finished in his profession as an archeologist."  See A. Chinen's Opposition at 5.  The Court disagrees that the alleged facts involving A. Chinen are within the common nucleus of operative facts concerning the decision not to rehire Plaintiff and further finds that A. Chinen's comments were not relevant to

SHPD's decision to terminate Plaintiff.  (The Court has also found <u>supra</u> that the statements by Kirkendall and McMahon were not made in the course of declining to rehire Plaintiff). However, even assuming the comments were relevant, the Ninth Circuit has held that supplemental jurisdiction is available to join pendent claims, but not available to join additional parties.  <u>See</u> <u>Hymer v. Chai</u>, 407 F.2d 136 (9th Cir. 1969); <u>see also</u> <u>Anthony v. Cleveland</u>, 355 F.Supp. 789, 793 (D. Haw. 1973). Since the Court would not otherwise have jurisdiction over A. Chinen, the defamation claim against her must be dismissed without prejudice.

Because the Court has not been asked to address the substance of any of the remaining state law claims, the Court will not address them at this time.

<u>**CONCLUSION**</u>

For the foregoing reasons, the Court grants: (1) Defendants Melanie Chinen, Bob Awana, Laura Thielen, Peter Young, Robert A. Masuda, Nancy McMahon, and Melissa Kirkendall, in their Official Capacities, and the State of Hawaii's Motion to Dismiss; (2) Defendants Bob Awana, Laura Thielen, and Peter Young's Motion to Dismiss; (3) Defendants Melanie Chinen and Robert Masuda's Motion to Dismiss for failure to state a claim under Rule 12(b)(6); and (4) Defendant Ashley Chinen's Motion to Dismiss for lack of subject matter jurisdiction under Rule 12(b)(1).

Plaintiff is given thirty days leave to amend the Complaint in accordance with this order.[20]

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, May 14, 2008.



_____
Alan C. Kay
Sr. United States District Judge


Brown v. Chinen, Civ. No. 07-00556 ACK/LEK, ORDER GRANTING: (1) DEFENDANTS MELANIE CHINEN, BOB AWANA, LAURA THIELEN, PETER YOUNG, ROBERT A. MASUDA, NANCY MCMAHON AND MELISSA KIRKENDALL, IN THEIR OFFICIAL CAPACITIES AND STATE OF HAWAII'S MOTION TO DISMISS; (2) DEFENDANTS BOB AWANA, LAURA THIELEN, AND PETER YOUNG'S MOTION TO DISMISS; (3) DEFENDANTS MELANIE CHINEN AND ROBERT MASUDA'S MOTION TO DISMISS; (4) DEFENDANTS ASHLEY CHINEN'S MOTION TO DISMISS; AND (5) PLAINTIFF THIRTY DAYS LEAVE TO AMEND THE COMPLAINT.

---

[20]  In dismissing the Complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegations of other facts."  Cook, Perkiss & Liehe, Inc. v. Northern California Collection Serv., Inc., 911 F.2d 242, 247 (9th Cir. 1990); see also Lopez v. Smith, 203 F.3d 112, 1130 (9th Cir. 2000).