IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

DAVID BROWN,                           )   Civ. No. 07-00556 ACK-LEK
                                       )
            Plaintiff,                 )
                                       )
       vs.                             )
                                       )
STATE OF HAWAII, ET AL.,               )
                                       )
            Defendants.                )
_____)

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND DECISION AS TO PLAINTIFF'S NAGPRA CLAIM

            This action was initiated on November 11, 2007.

Following two rounds of motions to dismiss, on March 12, 2009,

Plaintiff David Brown filed a third amended complaint asserting,

among other things, a claim under the Native American Graves and

Repatriation Act ("NAGPRA"), 25 U.S.C. § 3001 et seq., against

Defendants the State of Hawai'i ("State"), Melanie Chinen, in her

official capacity as the former Administrator of the State

Historic Preservation Division ("SHPD") of the Department of Land

and Natural Resources ("DLNR"), Nancy McMahon, in her official

capacity as the then-current Administrator of SHPD, and Laura

Thielen, in her official capacity as the Director of the DLNR

(collectively, "State Defendants").[1]  Pursuant to Fed. R. Civ.

_____

[1] With respect to the two rounds of motions to dismiss,
four motions to dismiss were filed as to Plaintiff's initial
complaint in February and March of 2008, and two motions to
dismiss were filed as to Plaintiff's second amended complaint in
                                          (continued...)

P. 25(d), Pualaokalani D. Aiu, the current Administrator of SHPD, is automatically substituted for McMahon.  On June 19, 2009, Plaintiff filed a motion for summary judgment as to the NAGPRA claim, but the motion was denied because there were genuine issues of material fact as to whether SHPD was in compliance with the statute.  In ruling on the motion, the Court found that Plaintiff had sufficiently established Article III standing insofar as he had asserted an injury that was different in kind than the public at large.  The Court has federal question jurisdiction, and venue is proper in this District.  See 28 U.S.C. §§ 1331, 1391(b).

A bench trial was commenced on October 20, 2009, and completed on October 27, 2009.  On October 21, 2009, the State Defendants made an oral motion for judgment on partial findings

---

[1]/(...continued)
June and July of 2008.  See Brown v. Chinen, Civ. No. 07-00556 ACK-LEK, 2008 U.S. Dist. LEXIS 39659 (D. Haw. May 14, 2008) (order on the first round of motions); Brown v. Hawai'i, Civ. No. 07-00556 ACK-LEK, 2009 U.S. Dist. LEXIS 10546 (D. Haw. Feb. 10, 2009) (order on the second round of motions).
        Plaintiff's NAGPRA claim was first alleged, albeit vaguely, in his initial complaint.  The Court dismissed the claim with leave to amend in its May 14, 2009, order.  The claim was reasserted in the first and second amended complaints.  In reviewing the sufficiency of the allegations in the second amended complaint, the Court dismissed the NAGPRA claim in part with leave to amend in its February 10, 2009, order.
        Apart from his NAGPRA claim, Plaintiff has advanced a First Amendment retaliation claim based on his prior employment at SHPD.  On September 23, 2009, the Court entered summary judgment as to that claim in favor of the State Defendants and Chinen, in her individual capacity.

pursuant to Fed. R. Civ. P. 52(c). They renewed the motion on October 22, 2009. In both instances, the Court took the motions under advisement. In view of the decision herein, the motions will be denied as moot.

Having heard and carefully weighed all the evidence and testimony adduced at the trial, having observed the demeanor of the witnesses and evaluated their credibility and candor, having heard the arguments of counsel and considered the memoranda and proposed findings of fact and conclusions of law submitted, and pursuant to Fed. R. Civ. P. 52(a)(1), the Court makes the following findings of fact and conclusions of law. Where appropriate, findings of fact shall operate as conclusions of law, and conclusions of law shall operate as findings of fact.

## FINDINGS OF FACT

### I.   Background

1.   SHPD is a part of the DLNR, a State agency, and was established to administer a comprehensive historic preservation program. Hawai'i Revised Statutes ("HRS") §§ 26-4(11), 6E-3. SHPD receives two federal grants in connection with its programs. 10/21/09 Transcript of Proceedings ("Tr.") 103:15–21 (Aiu's Test.).[2]

---

[2] The record citations herein are to the rough draft of the transcript of proceedings because the final transcript is not yet available.

2.    In administering the historic preservation
program, SHPD comes into possession of Native Hawaiian human
remains.  Its duties, obligations, and authority with regard to
prehistoric and historic burial sites and human remains over
fifty years old are governed by HRS §§ 6E-43 through 6E-43.6.
Those sections provide a specific mechanism for the preservation
of burial sites and the determination of cultural or lineal
descendants of the individuals whose remains are found in burial
sites.

3.    SHPD maintains inventories of the human remains in
its possession.  The inventories generally include information as
to where and when the human remains were found.  St. Defs.'
Exs. 500-03, 507 (SHPD's inventories of human remains); 10/20/09
Tr. 47:1, 141:2, 164:17 (admitting St. Defs.' Exs. 500, 501, and
503 into evidence); 10/21/09 Tr. 3:5 (admitting St. Defs.'
Ex. 502 into evidence); 10/22/09 Tr. 52:21 (admitting St. Defs.'
Ex. 507 into evidence).  SHPD works with Island Burial Councils,
which are established by state law, to repatriate or reinter the
human remains.  See 10/22/09 Tr. 34:9-35:5 (Aiu's Test.); HRS
§ 6E-43.5.  According to the custom and practice of SHPD and in
accordance with state law, including Hawai'i Administrative Rules
§ 13-300, and the customs and cultural practices of Native
Hawaiians, the human remains and associated funerary objects that
come into the possession or control of SHPD are not available for

4

archeological study and are required to be reburied as soon as practicable in a culturally appropriate and sensitive way. 10/20/09 Tr. 71:7-13 (Pl.'s Test.); 10/21/09 Tr. 114:21-115:5, 136:19-22 (Aiu's Test.).

     4.   Plaintiff has been working in the field of archeology for approximately ten years.  10/20/09 Tr. 137:4-11 (Pl.'s Test.).  He is the former Branch Chief Archeologist for SHPD.  Id. at 137:21-22 (Pl.'s Test.).  He was hired in September of 2005 and his last day of work was on June 30, 2006.  Id. at 137:14-17.  During that time, Chinen was his immediate supervisor.  Id. at 137:23-24.

## II.  Plaintiff's NAGPRA Claim

     5.   In his NAGPRA claim, Plaintiff asserts that SHPD is subject to NAGPRA because it qualifies as a "museum" under the statute.  See 3d Am. Compl. ¶ 165-66.  He further maintains that the State and Chinen violated a number of NAGPRA's policies and that the violations are ongoing.  Id. ¶ 164.  Plaintiff contends that SHPD's inventories of Native Hawaiian human remains are not in compliance with NAPGRA's inventory requirements.  See 25 U.S.C. § 3003; 43 C.F.R. §§ 10.9, 10.13.  He specifically maintains that SHPD has not met NAGPRA's notification and content requirements for inventories.  See infra Conclusions of Law ¶¶ 1-2.  Plaintiff seeks state-wide injunctive relief enjoining

the State Defendants from violating NAGPRA.  3d Am. Compl. Prayer ¶ 6.

6.   For their part, the State Defendants concede that SHPD is a "museum" for purposes of NAGPRA and that the human remains in its possession are therefore subject to the statute's inventory requirements.  10/21/09 Tr. 105:13-14 (Aiu's Test.); 10/22/09 Tr. 10:7-9, 12:14 (Aiu's Test.).  The State Defendants dispute whether SHPD's inventories meet the content requirements set forth in 43 C.F.R. § 10.9(c) because, in their view, the inventories are "substantially" in compliance.  10/22/09 Tr. 13:15-14:7 (Aiu's Test.).  However, they acknowledge that SHPD does not have an inventory for its collection of human remains that were found on the Island of Molokai.  Id. at 26:14-27:6 (Aiu's Test.) (explaining that, because SHPD does not have staff on Molokai, it decided that a family would serve as the repository for burials found on the island).[3/]  The State Defendants also concede that SHPD has failed to comply with the notification requirements.  Id. at 10:7-9 (Aiu's Test.) ("That leaves us in violation of the NAGPRA reporting requirements."); 10/27/09 Tr. 4:1-6 (St. Defs.' Counsel); St. Defs.' Post-trial Proposed Findings of Fact and Conclusions of Law 6 ("Defendants concede that they are not currently in compliance with the part

_____

[3/] Aiu testified that SHPD does not have any human remains from the Island of Lanai in its inventory.  10/22/09 Tr. 27:7-16 (Aiu's Test.).

of the inventory provisions of NAGPRA, as set forth in C.F.R. § 10.13, that requires that SHPD provide copies of its inventories to the National Park Service and file a Notice of Completion for publication in the Federal Register within two years of the effective date of § 10.13 (April 7, 2009)."). They explain that they were previously under the impression that NAGPRA's inventory requirements only applied to a museum's holdings that were originally found on federal or tribal lands. 10/21/09 Tr. 96:17-22 (St. Defs.' Opening Statement); 10/22/09 Tr. 11:21-12:10 (Aiu's Test.). The State Defendants also seemed to believe that NAGPRA only applied to a museum's holdings that were in its possession prior to NAGPRA's enactment, November 16, 1990. See St. Defs.' Trial Br. Supplement 4-5, 10/14/09.

    7. The State Defendants note that at the present time SHPD is in consultation with federal officials who administer NAGPRA and is in the process of coming into compliance with the statute's requirements. 10/22/09 Tr. 12:17-20, 49:4-12 (Aiu's Test.). Specifically, SHPD's current Administrator has spoken with Sherry Hutt. Id. at 7:23-8:2, 9:2-4, 55:4-8 (Aiu's Test.). The National NAGPRA Program's website reflects that Hutt is the National NAGPRA Program Manager. See National NAGPRA Contacts Home, http://www.nps.gov/history/nagpra/contacts/index.htm (last visited Oct. 27, 2009); Fed. R. Evid. 201. SHPD intends to achieve compliance as soon as it can. 10/22/09 Tr. 59:8-10

(Aiu's Test.).   In addition, the State Defendants explain that
SHPD has stopped any reburial activities in order to comply with
NAGPRA's notification requirements.   <u>Id.</u> at 12:23-13:3 (Aiu's
Test.).

        8.   While the State Defendants do not dispute that
SHPD is, at least to some degree, in violation of NAGPRA, it is
important to remember that Plaintiff is seeking permanent
injunctive relief in this case.   3d Am. Compl. Prayer ¶ 6.   In
order to obtain such relief, as explained more fully below, he
must show that he has suffered irreparable harm because of SHPD's
alleged noncompliance or that he is likely to suffer immediate
irreparable harm as a result thereof.   <u>See</u> <u>infra</u> Conclusions of
Law ¶¶ 5-7.

**III. Plaintiff's Alleged Irreparable Harm**

        9.   Plaintiff testified at trial as to why he believes
that he is personally harmed by SHPD's alleged noncompliance with
NAGPRA.   He stated that, in his capacity as an archeologist, "if"
he had to serve a client, such as a developer, who was engaged in
undertaking an action that might have subsurface impact, he would
have a very difficult time finding out where human remains were
located in the absence of an inventory that accurately describes
with specificity where human remains were found.   10/20/09 Tr.
154:9-23 (Pl.'s Test.).   Plaintiff noted that, when human remains
are found in one location, there is a likelihood of finding more

8

remains in the surrounding area.  Id. at 158:17-22 (Pl.'s Test.).

He explained that, if the geographical information as to burial

sites in the inventories is unavailable, then there is a greater

likelihood of inadvertent discoveries of human remains, and that

such discoveries have adverse consequences for developers.  Id.

at 154:18-155:2, 158:21-159:2 (Pl.'s Test.).  In addition,

Plaintiff testified that, if inventory completion notices were

published in the Federal Register, as contemplated by NAGPRA, see

infra Conclusions of Law ¶ 2, more individuals would come forward

to compile additional folklore or oral histories.  10/21/09 Tr.

28:10-21 (Pl.'s Test.).  He asserted that the folklore or oral

histories would give him more information about where remains

were located and that he could use such information to plan for

avoidance when trying to help developers and other clients.  Id.

10.  However, Plaintiff has not shown that he is

presently employed by a developer.  Indeed, he did not testify

regarding any current employment.  Plaintiff did testify as to

his curriculum vitae.  He explained that, in his profession, one

maintains a curriculum vitae on a yearly basis and updates it as

one achieves goals in the profession.  10/20/09 Tr. 136:14-16

(Pl.'s Test.).  Plaintiff's curriculum vitae suggests that his

last date of employment was in 2006 at SHPD.  See Pl.'s Ex. 101

(Pl.'s curriculum vitae); 10/20/09 Tr. 137:1 (admitting Pl.'s

Ex. 101 into evidence).  Thus, Plaintiffs has not shown any

9

archeological work since leaving SHPD in 2006; nor has he established any employment in future archaeological work in Hawai'i.[4/]

11.  Morever, even if he had established that he was currently employed by a developer to determine the location of burials, Plaintiff has not shown that the documents that SHPD has on file in its library would be insufficient to make that determination.  SHPD's library contains archeology reports of sites where burials were found.  10/21/09 Tr. 49:5-12 (Pl.'s Test.), 55:13-15 (Pl.'s Test.) ("The public has full access to go to SHPD and get information out of the library at will."), 110:10-19 (Aiu's Test.) (explaining that, when archaeologists research whether a given area contains human remains, they rely on their personal libraries and SHPD's library).  Plaintiff testified that, while he was working at SHPD in 2005 and 2006, the library was incomplete and missing archeology reports that discuss the location of burials.  Id. at 49:5-14 (Pl.'s Test.).  However, he has not returned to the library since 2006 because, in his words, he has "no purpose really to go into the office." Id. at 49:16-25 (Pl.'s Test.).  In addition, he testified that

_____

[4/] In his supplement to his trial brief, Plaintiff claims that, "[a]s early as today, [he] could and does investigate sites for clients."  Pl.'s Supplement to his Trial Br. 2, 11/6/09. However, as noted earlier, he did not testify as to any current employment at trial.

his fellow archeologists have been working with SHPD to restore missing files in its library.  Id. at 49:10-22 (Pl.'s Test.).

12.  The Court finds that Plaintiff has not established by a preponderance of the evidence that he has suffered irreparable injury because of SHPD's alleged noncompliance with NAGPRA's inventory requirements or that he is likely to suffer such injury immediately as a result thereof.

## CONCLUSIONS OF LAW

### I.   NAGPRA

1.   Under NAGPRA, a "museum" is "any institution or State or local government agency (including any institution of higher learning) that receives Federal funds and has possession of, or control over, Native American cultural items."  25 U.S.C. § 3001(8).  The statute states that "[e]ach museum which has possession or control over holdings or collections of Native American human remains and associated funerary objects shall compile an inventory of such items and, to the extent possible based on information possessed by such museum . . . , identify the geographical and cultural affiliation[5/] of such item[s]."  Id. § 3003(a); see also 43 C.F.R. § 10.9(a) ("Under [25 U.S.C. § 3003], each museum or Federal agency that has possession or control over holdings or collections of human remains and

_____

[5/]  It would appear that, in Hawai'i, the only "cultural affiliation" involved is that of Native Hawaiian.  10/21/09 Tr. 31:17-22 (Pl.'s Test.).

associated funerary objects must compile an inventory of such
objects, and, to the fullest extent possible based on information
possessed by the museum or Federal agency, must identify the
geographical and cultural affiliation of each item.").[6/]  The
inventory must be (A) "completed in consultation with tribal
government and Native Hawaiian organization officials and
traditional religious leaders," (B) "completed by not later than
the date that is 5 years after the date of enactment of
[NAGPRA]," November 16, 1990, and (C) "made available both during
the time they are being conducted and afterward to a review
committee established under [25 U.S.C. § 3006]."  25 U.S.C.
§§ 3003(b)(1)(A), (B), (C).

        2.   "[T]he term 'inventory' means a simple itemized
list that summarizes the information called for by this section."
Id. § 3003(e).  "The purpose of the inventory is to facilitate
repatriation by providing clear descriptions of human remains and
associated funerary objects and establishing the cultural

---

        [6/] "Associated funerary objects" means
            objects that, as a part of the death rite or
            ceremony of a culture, are reasonably
            believed to have been placed with individual
            human remains either at the time of death or
            later, and both the human remains and
            associated objects are presently in the
            possession or control of a Federal agency or
            museum, except that other items exclusively
            made for burial purposes or to contain human
            remains shall be considered as associated
            funerary objects.
25 U.S.C. § 3001(3)(A).

affiliation between these objects and present-day Indian tribes and Native Hawaiian organizations." 43 C.F.R. § 10.9(a). The specific requirements for the contents of an inventory are set forth in 43 C.F.R. § 10.9(c).[7/] Museums must provide notice in

---

[7/] 43 C.F.R. § 10.9(c) provides:
 Required information. The following documentation must be included, if available, for all inventories completed by museum or Federal agency officials:
 (1) Accession and catalogue entries, including the accession/catalogue entries of human remains with which funerary objects were associated;
 (2) Information related to the acquisition of each object, including:
  (i) the name of the person or organization from whom the object was obtained, if known;
  (ii) The date of acquisition,
  (iii) The place each object was acquired, i.e., name or number of site, county, state, and Federal agency administrative unit, if applicable; and
  (iv) The means of acquisition, i.e., gift, purchase, or excavation;
 (3) A description of each set of human remains or associated funerary object, including dimensions, materials, and, if appropriate, photographic documentation, and the antiquity of such human remains or associated funerary objects, if known;
 (4) A summary of the evidence, including the results of consultation, used to determine the cultural affiliation of the human remains and associated funerary objects pursuant to [43 C.F.R.] § 10.14 of these regulations.
43 C.F.R. § 10.9(c).
 Plaintiff has suggested numerous means of improving SHPD's inventories of human remains consistent with the goals of NAGPRA; however, many of Plaintiff's suggestions, while certainly thoughtful and worthy of consideration, would not appear to be
      (continued...)

connection with the inventories to any affiliated Indian tribes,
any affiliated Native Hawaiian organizations, and the Manager of
the National NAGPRA Program.  25 U.S.C. § 3003(d)(1); 43 C.F.R.
§§ 10.9(e), 10.13(b)(1)(ii).  The Manager of the National NAGPRA
Program publishes notices of inventory completion received from
museums in the Federal Register.  43 C.F.R. § 10.9(e)(7).

   3. In addition, NAGPRA's regulations contemplate the
production of additional inventories after the initial inventory
has been completed.  Specifically, 43 C.F.R. § 10.13 provides in
relevant part that:

> Any museum or Federal agency that, after
> completion of the . . . inventories as
> required by [43 C.F.R. §] . . . 10.9,
> receives a new holding or collection or
> locates a previously unreported current
> holding or collection that may include human
> remains, funerary objects, sacred objects or
> objects of cultural patrimony, must . . .
> [w]ithin 2 years of receiving a new holding
> or collection or locating a previously
> unreported current holding or collection, or
> within 2 years of the effective date of this
> rule, [April 20, 2007,] whichever is later,
> prepare in consultation with any affiliated
> Indian tribe or Native Hawaiian organization,
> an inventory as required by [43 C.F.R.]
> § 10.9 . . . .

Id. § 10.13(b)(1)(ii); Native American Graves Protection and
Repatriation Act Regulations—Future Applicability, 72 Fed. Reg.

---

[7]/(...continued)
required by law.

13184, 13184 (Mar. 21, 2007) (providing the effective date of the regulation).[8/]

4.    In the case at hand, as noted earlier, the State Defendants have conceded that SHPD is presently in violation of the notice requirements, because it has not provided the Manager of the National NAGPRA Program notice of completion of their inventories.  See supra Findings of Fact ¶ 5.  However, they dispute whether SHPD is in violation of the inventory content requirements set forth in 43 C.F.R. § 10.9(c) because, in their view, SHPD's inventories are in "substantial" compliance.  See id.

5.    The Court need not decide at this time whether, or to what extent, SHPD is in violation of NAGPRA.  It bears

_____

[8/] The Court observes that the State Defendants took the position at trial that, between the time an initial inventory is completed and the effective date of 43 C.F.R. § 10.13, April 20, 2007, museums had no obligation to maintain inventories of human remains in their possession or control under NAGPRA.  10/21/09 Tr. 68:22-69:9 (St. Defs.' Counsel).  The Court also notes that the State Defendants asserted prior to trial that the Secretary of the Interior did not have the authority to reinstate the inventory and reporting requirements set forth in 43 C.F.R. § 10.13.  The Secretary addressed this argument in responding to comments to the regulation.  Native American Graves Protection and Repatriation Act Regulations—Future Applicability, 72 Fed. Reg. at 13185 (concluding that the Secretary has the authority to promulgate regulations establishing new deadlines for completion of inventories after those specified in NAGPRA, principally based on 25 U.S.C. § 3005(a)'s requirement that a museum repatriate upon demand, as continuing inventory requirements would facilitate such repatriation).  The Court does not have to address the State Defendants' contention as to the Secretary's authority at this juncture because it ultimately concludes that Plaintiff is not entitled to permanent injunctive relief.

repeating that Plaintiff is requesting permanent injunctive relief.  3d Am. Compl. Prayer ¶ 6.  Even if SHPD is indeed in violation of NAGPRA's inventory requirements, Plaintiff has not established that such relief is appropriately entered in his favor.

## II.  Permanent Injunctive Relief

### A.    The Irreparable Harm Requirement

6.    "[W]hether a permanent injunction is appropriate . . . turns on whether the plaintiff can establish by a preponderance of the evidence that this form of equitable relief is necessary."  <u>Sheely v. MRI Radiology Network, P.A.</u>, 505 F.3d 1173, 1182 n.10 (11th Cir. 2007).  A plaintiff seeking a permanent injunction must demonstrate:

> "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."

<u>Reno Air Racing Ass'n v. McCord</u>, 452 F.3d 1126, 1137 n.10 (9th Cir. 2006) (quoting <u>eBay Inc. v. MercExchange, L.L.C.</u>, 547 U.S. 388, 391 (2006)); <u>accord</u> <u>W. Org. of Res. Council v. Johanns (In re Geertson Seed Farms)</u>, 541 F.3d 938, 943 (9th Cir. 2008).

7.    With respect to the first element, where irreparable harm has not yet been suffered, there must be a

likelihood that such harm will be "immediate" in the absence of injunctive relief.  See G.C. & K.B. Invs., Inc. v. Wilson, 326 F.3d 1096, 1107 (9th Cir. 2003).  "Irreparable harm is an essential prerequisite for a grant of injunctive relief." Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 217 F.3d 8, 13 (1st Cir. 2000) (affirming the issuance of a permanent injunction); Midwest Growers Coop. Corp. v. Kirkemo, 533 F.2d 455, 465–66 (9th Cir. 1976) (concluding that a permanent injunction was improperly issued because the plaintiff had "failed to show either irreparable harm or lack of any adequate remedy at law—both prerequisites to injunctive relief").

**B.    Statutory Standing Under NAGPRA**

8.    Contrary to the foregoing authorities, Plaintiff contends that he does not have to show a likelihood of imminent irreparable harm in order to obtain permanent injunctive relief because he has standing under 25 U.S.C. § 3013.  Pl.'s Supplement to his Trial Br. 3–9, 11/6/09; Pl.'s Supplement to his Am. Findings of Fact & Conclusions of Law 9, 11/6/09.  The statute provides that:  "The United States district courts shall have jurisdiction over any action brought by any person alleging a violation of [NAGPRA] and shall have the authority to issue such orders as may be necessary to enforce the provisions of [the] Act."  25 U.S.C. § 3013.  Plaintiff seems to assert that, because he is a "person," he has standing under this provision.

17

9.   "Statutory standing is simply statutory interpretation:  the question it asks is whether Congress has accorded <u>this</u> injured plaintiff the right to sue the defendant to redress his injury."  <u>Graden v. Conexant Sys. Inc.</u>, 496 F.3d 291, 295 (3d Cir. 2007) (emphasis in original); <u>see also</u> <u>Holmes v. Sec. Investor Prot. Corp.</u>, 503 U.S. 258, 287 (1992) (Scalia, J., concurring) ("Yet another element of statutory standing is compliance with what I shall call the 'zone-of-interests' test, which seeks to determine whether, apart from the directness of the injury, the plaintiff is within the class of persons sought to be benefitted by the provision at issue."); <u>Bennett v. Spear</u>, 520 U.S. 154, 163 (1997) (explaining that the zone-of-interests test asks "'whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question'" (quoting <u>Ass'n of Data Processing Serv. Orgs., Inc. v. Camp</u>, 397 U.S. 150, 153 (1970))).

10.   It would appear that Plaintiff has statutory standing under 25 U.S.C. § 3013.  Nevertheless, statutory standing alone is not enough; it is but one component of Plaintiff's NAGPRA claim.  In order to succeed on that claim and obtain injunctive relief, he must make a showing of irreparable harm.  <u>See</u> <u>Reno Air Racing</u>, 452 F.3d at 1137 n.10; <u>G.C. & K.B. Invs.</u>, 326 F.3d at 1107; <u>cf.</u> <u>Los Angeles v. Lyons</u>, 461 U.S. 95,

18

111 (1983) (concluding that, even if the plaintiff had Article III standing to seek an injunction, he would not be entitled to injunctive relief because he had not shown irreparable injury).

C. **Analysis of Irreparable Harm**

11. The Court has found that Plaintiff has not established by a preponderance of the evidence that he has suffered irreparable injury because of SHPD's alleged noncompliance with NAGPRA's inventory requirements or that he is likely to suffer such injury immediately as a result thereof. See supra Findings of Fact ¶ 9. He is thus not entitled to permanent injunctive relief as to his NAGPRA claim at this juncture because he has not satisfied an essential element of the standard for injunctive relief. See Reno Air Racing Ass'n, 452 F.3d at 1137 n.10.[9]

---

[9] Having concluded that Plaintiff is not entitled to injunctive relief for his failure to establish irreparable injury, the Court need not address the State Defendants' contention that injunctive relief is unnecessary because SHPD is currently in the process of consulting with the National NAGPRA Program to come into compliance with the statute's inventory requirements. See Orantes-Hernandez v. Thornburgh, 919 F.2d 549, 564 (9th Cir. 1990) ("Permanent injunctive relief is warranted where . . . [the] defendant's past and present misconduct indicates a strong likelihood of future violations."). The Court expects SHPD to diligently continue its consultation with the National NAGPRA Program regarding its inventories of human remains. As the State Defendants are well aware, the Secretary of the Interior has the authority under 25 U.S.C. § 3007 to enforce the provisions of NAGPRA at issue in this lawsuit by imposing monetary penalties upon SHPD for noncompliance.

### DECISION

Plaintiff should be commended for bringing his NAGPRA claim.  As the State Defendants' counsel acknowledged in his opening statement, the claim effectively brought certain issues of noncompliance to light.  See 10/21/09 Tr. 96:17-22 (St.' Defs.' Counsel) ("In a very perverse way, my client has to thank Mr. Brown for bringing this case.  Because although SHPD had been under the belief and understanding that NAGPRA did not apply to it, unless there was a finding on federal or tribal lands, there apparently is a dispute as to whether or not that is an accurate interpretation of the law.").  It appears that, as a direct result of this litigation, SHPD has initiated consultation with the National NAGPRA Program in an effort to come into compliance with the statute.  Nevertheless, the Court may only issue permanent injunctive relief upon a proper showing.  See Reno Air Racing Ass'n, 452 F.3d at 1137 n.10.  Based on the evidence presented at trial, the Court finds that Plaintiff has not established that injunctive relief is appropriately issued in his favor at this time because he has failed to show that he has suffered irreparable harm or that he will likely suffer such harm immediately in the absence of injunctive relief.  See id.

In accordance with the foregoing, the Court:

(1)   DENIES as moot the State Defendants' motions for judgment on partial findings;

20

(2)   FINDS that Plaintiff has failed to prove that he is entitled to permanent injunctive relief as to his NAGPRA claim by a preponderance of the evidence; and

(3)   FINDS that the State Defendants are entitled to judgment on the NAGPRA claim.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai'i, November 13, 2009.



_____
Alan C. Kay
Sr. United States District Judge

<u>Brown v. Hawaii</u>, Civ. No. 07-00556 ACK-LEK:  Findings of Fact, Conclusions of Law, and Decision as to Plaintiff's NAGPRA Claim