IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| DAVID BROWN, | ) | CIVIL NO. 07-00556 ACK-LEK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| MELANIE CHINEN, LAURA | ) | |
| THIELEN, in her Official | ) | |
| Capacity, NANCY MCMAHON, in | ) | |
| her Official Capacity, STATE | ) | |
| OF HAWAII, DOES 1-20, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**REPORT OF SPECIAL MASTER ON DEFENDANT
MELANIE CHINEN'S MOTION FOR AWARD OF ATTORNEY'S FEES
AND MOTION FOR SANCTIONS PURSUANT TO FRCP 11**

Before the Court, pursuant to designations by Senior

United States District Judge Alan C. Kay, are the Motion for

Award of Attorney's Fees ("Fees Motion") and the Motion for

Sanctions Pursuant to FRCP 11 ("Rule 11 Motion"), filed on

September 28, 2009, by Defendant Melanie Chinen, in her

individual capacity ("Chinen").  Chinen requests an award of

$79,475.00 in attorney's fees.  Plaintiff David Brown

("Plaintiff") filed his memoranda in opposition to the motions on

November 25, 2009, and Chinen filed her consolidated reply on

December 1, 2009.  Defendants the State of Hawai'i,

Melanie Chinen, Laura Thielen, and Nancy McMahon in their

official capacities (collectively "State Defendants") filed

statements of no opposition to the motions on December 11, 2009.

This matter came on for hearing on December 15, 2009.  Appearing on behalf of Chinen was William Wynhoff, Esq., and appearing on behalf of Plaintiff was Mark Beatty, Esq.  Appearing on behalf of the State Defendants was John Cregor, Jr., Esq.  After careful consideration of the Motion, supporting and opposing memoranda, and the arguments of counsel, the Court HEREBY FINDS AND RECOMMENDS that Chinen's Fees Motion and Chinen's Rule 11 Motion be GRANTED IN PART AND DENIED IN PART.  The Court RECOMMENDS that the district judge award Chinen $20,793.75 in attorney's fees pursuant to 42 U.S.C. § 1988.  The Court further RECOMMENDS that the district judge sanction Plaintiff's counsel, Mark Beatty, Esq., $1,500.00 pursuant to Rule 11 of the Federal Rules of Civil Procedure.

## BACKGROUND

Plaintiff previously worked for the State Historic Preservation Division ("SHPD") as the Branch Chief Archeologist. Chinen was his supervisor.  Chinen declined to renew Plaintiff's contract.

Plaintiff filed the instant action on November 7, 2007. The original Complaint named the following defendants: Chinen, Bob Awana, Laura Thielen, Peter Young, Robert A. Masuda, Nancy McMahon, Melissa Kirkendall, Ashley Chinen, and the State of Hawaii ("the State").  Plaintiff alleged that the reasons SHPD gave for the non-renewal of his contract were pretext and that

the real reason was that he criticized numerous SHPD practices as being illegal, unethical, or culturally insensitive.  As to Chinen, Plaintiff alleged that she declined to renew his contract because of statements that he made to her.  Plaintiff's Complaint alleged the following claims: negligence regarding SHPD's handling of human remains against the State and Chinen, in her individual and official capacities; negligent hiring, training and supervision against the State, Young, and Masuda; negligent infliction of emotional distress against Chinen, Young, and Matsuda, in their individual and official capacities; defamation against Chinen; defamation against McMahon, Kirkendall, and Ashley Chinen, in their official and individual capacities; conspiracy to defame against Chinen, McMahon, Kirkendall, and Ashley Chinen, in their official and individual capacities; conspiracy to coerce to violate laws, ethics and standards against Chinen, Awana, and Thielen, in their official and individual capacities; intentional infliction of emotional distress against Chinen, in her individual and official capacities; retaliation in violation of public policy, state law, Title VII, and the First and Fourteenth Amendments of the United States Constitution against the State, and Chinen, Awana, Thielen, Young, and Masuda, in their official and individual capacities.

On May 14, 2008, the district judge granted the

defendants' various motions to dismiss the original Complaint.
See Brown v. Chinen, Civ. No. 07-00556 ACK-LEK, 2008 WL 2073496
(D. Hawai'i May 14, 2008) ("Brown I").  The district judge ruled,
inter alia, that Plaintiff's statements to Chinen were not
protected speech under the First Amendment because Plaintiff made
the statements as a public employee, not as a citizen.

Plaintiff filed his First Amended Complaint ("FAC") on
June 13, 2008.  Only Chinen and the State were named as
defendants in the FAC.  The FAC alleged the following claims: a
§ 1983 claim for retaliation against the State and Chinen, in her
individual capacity; and violation of the Native American Graves
Protection and Repatriation Act ("NAGPRA") against the State.
The State and Chinen, in her official capacity, filed a motion to
dismiss on June 27, 2008, and Chinen, in her individual capacity,
filed a motion to dismiss on July 17, 2008.

While the motions to dismiss were pending, the parties
stipulated to allow Plaintiff to amend his FAC.  The Second
Amended Complaint[1] ("SAC") clarified that Plaintiff's NAGPRA
claim was against the State, Chinen, Thielen, and McMahon in
their official capacities (collectively "State Defendants").  On
February 10, 2009, after supplemental memoranda regarding the
filing of the SAC, the district judge issued an Order: (1)

---

[1] Plaintiff did not actually file the SAC.  The stipulation
refers to the copy of the SAC attached to the Motion to Amend
Plaintiff's First Amended Complaint, filed October 10, 2008.

Granting in Part and Denying in Part Defendants' Motions to Dismiss the Second Amended Complaint; and (2) Granting Plaintiff Thirty Days Leave to Amend the Complaint.  See Brown v. Hawaii, Civ. No. 07-00556 ACK-LEK, 2009 WL 330209, at *12 (D. Hawai'i Feb. 10, 2009) ("Brown II").  The district judge ruled that Plaintiff had alleged the elements of a First Amendment retaliation claim as to some of the statements Plaintiff cited in the SAC.

Plaintiff filed his Third Amended Complaint ("TAC") on March 12, 2009.  The TAC named the same defendants and alleged the same claims for relief, but contained some additional factual allegations.

Chinen, in her individual capacity, filed her Motion for Summary Judgment on June 15, 2009, and the State Defendants filed a joinder on June 18, 2009.  Plaintiff filed a motion for summary judgment on the NAGPRA claim on June 19, 2009.  On September 23, 2009, the district judge issued an order granting Chinen's motion and the State Defendants' joinder and denying Plaintiff's motion ("Summary Judgment Order").

The district judge conducted a nonjury trial on the NAGPRA claim from October 20, 2009 to October 27, 2009.  On November 13, 2009, the district judge issued his Findings of Fact and Conclusions of Law and Decision as to Plaintiff's NAGPRA Claim ("NAGPRA Decision").  The district judge ruled, inter alia,

that the State Defendants were entitled to judgment on the NAGPRA claim.  On November 30, 2009, the Clerk of the Court issued judgment, pursuant to the Summary Judgment Order and the NAGPRA Decision, against Plaintiff and in favor of the State Defendants, and Chinen in her individual capacity and in her official capacity as the former Administrator of SHPD.

## I.   **Fees Motion**

In the Fees Motion, Chinen states that she conducted discovery on Plaintiff's retaliation claim and learned that Plaintiff had no evidence that she knew of his allegedly protected speech.  She points out that, the decision maker's knowledge of the plaintiff's protected speech at the time of the adverse employment decision was a clearly established requirement when Plaintiff filed his complaints.

Chinen argues that the admissions in Plaintiff's concise statement of facts in response to her Motion for Summary Judgment illustrate Plaintiff's lack of evidence.  He admitted that his September 28, 2005 statements about harbor improvements for the Superferry and his October 8, 2005 statements to the Society for Hawaiian Archeology were made as a public employee, not a private citizen.  In addition, he had no evidence that this speech played any part in the non-renewal of his contract. Plaintiff also admitted that the following speech was confidential and that he had no evidence it played a part in his

non-renewal: speech to Sunny Greer, former SHPD employee; speech
to instructors and students in a leadership class at the
University of Hawai'i; speech to his friends and various people
in the community; and speech to Dr. John Peterson.  Thus,
Plaintiff expected that these statements would not be relayed to
Chinen.  Plaintiff also made statements to Odessa Dayondon, who
was conducting an internal audit of SHPD, but none of the
protected statements appeared in the audit, and Plaintiff has no
evidence that those statements played a part in his non-renewal.
Finally, Plaintiff admitted that his statements to union agents,
the Legislature, and Robert Matsuda were made after Chinen's
decision not to renew his contract.

        Chinen argues that she is entitled to attorney's fees
as a prevailing defendant pursuant to 42 U.S.C. § 1988(b) because
Plaintiff continued to litigate this action after it became
frivolous, unreasonable, or without foundation.  Chinen seeks
attorney's fees incurred beginning with the filing of the TAC.
[Mem. in Supp. of Fees Motion at 12.]  She argues that it should
have been clear from the outset of this case that Plaintiff's
claims against her were meritless.  A cursory review would have
indicated that the statements Plaintiff relied upon in the
original Complaint were made in his employee capacity.  Chinen
also notes that the original Complaint included several other
meritless claims against the individual defendants.  Chinen notes

that, although Plaintiff chose not to pursue those claims after the district judge dismissed them, Plaintiff continued to purpose the § 1983 retaliation claim against her.  In fact, the TAC is based upon different speech that is at odds with the allegations in the original Complaint.  The new allegations were also frivolous and without foundation.

Chinen states that her attorney, William Wynhoff, Esq., worked 317.90 compensable hours from the filing of the TAC through the Fees Motion.  Chinen seeks an hourly rate of $250 for Mr. Wynhoff, for a total award of $79,475.00.  Chinen argues that the requested hourly rate is consistent with the rates customarily awarded to attorneys with Mr. Wynhoff's experience and background.  [Id. at 15-18.]

In his memorandum in opposition to the Fees Motion, Plaintiff argues that Chinen is seeking a double recovery with the two motions.[2]  Further, the fact that she prevailed on summary judgment is not a sufficient basis for a fee award under § 1988.  Plaintiff asserts that nothing in the district judge's Summary Judgment Order indicates that the action was unreasonable, frivolous, without foundation, or vexatious.  In fact, State Defendants' counsel acknowledged that Plaintiff brought certain issues of noncompliance with NAGPRA to light and

---

[2] Plaintiff also incorporates the arguments in his memorandum in opposition to the Rule 11 Motion and his memorandum in opposition to Chinen's Motion for Summary Judgment.

8

the district judge stated that Plaintiff should be commended for
bringing the NAGPRA action.  Plaintiff characterizes the district
judge's statement as "[d]eclarative relief", arguably rendering
him the prevailing party.  [Mem. in Opp. to Fees Motion at 4.]
As to his retaliation claim, Plaintiff asserts that the district
judge's ruling was not as obvious as Chinen portrays it to be.
The Summary Judgment Order contained significant analysis of the
issues whether Plaintiff spoke as a public employee and whether
Chinen was aware of the statements Plaintiff made as a private
citizen.

          Plaintiff also argues that he conducted an adequate
investigation of the facts.  Before he filed this action,
Plaintiff had a June 1, 2006 letter in which Chinen stated that
she received complaints about Plaintiff from his staff, persons
in the private archaeology community, and persons in the native
Hawaiian community about policy changes that Plaintiff made.
Plaintiff apparently contends that this is proof that the people
he made protected statements to relayed those statements to
Chinen.

          In a joint reply for both motions, Chinen emphasizes
that she served the Rule 11 Motion shortly after filing her
Motion for Summary Judgment.  This was more than nineteen months
after Plaintiff filed the original Complaint and less than two
months before the discovery cutoff.  At that time, Plaintiff had

no evidence that Chinen knew about his allegedly protected speech.  Plaintiff did not deny this in his memoranda.  Further, when Plaintiff filed his opposition to Chinen's Motion for Summary Judgment, it showed that he had no evidence that he engaged in protected speech to third parties.

Chinen notes that Plaintiff originally claimed he was fired because of speech directly to Chinen.  The district judge dismissed this claim.  Plaintiff then alleged that he was fired because of speech to third parties.  Plaintiff, however, did not have any evidence either that he engaged in such speech or that Chinen knew about the speech.  Plaintiff's current memoranda abandon these theories.  Instead, Plaintiff relies solely on the June 1, 2006 letter and argues that Chinen lied about the complaints the letter says she received.

Chinen acknowledges that a claim is not frivolous or sanctionable just because the defendant prevails on summary judgment.  She argues that she is entitled to § 1988 attorney's fees or Rule 11 sanctions because Plaintiff's original theory was deficient; Plaintiff never had factual support for his second theory; and Plaintiff continued to pursue the claim even after he failed to uncover supporting facts during discovery.  Chinen also argues that the district judge's failure to find that Plaintiff's claim is frivolous is irrelevant.  The issue whether the claim was frivolous was not before him.

Finally, even if the NAGPRA claim is not sanctionable, the existence of one non-sanctionable claim does not immunize the entire complaint.  Plaintiff improperly brought the NAGPRA claim against her in her official capacity because she resigned from her position shortly after the original Complaint was filed.  Her successors were substituted as the parties.

## II.  **Rule 11 Motion**

Chinen's Rule 11 Motion relies on substantially the same facts and arguments as the Fees Motion.  In addition, she notes that, after she received the TAC, she served interrogatories on Plaintiff.  As to each instance of allegedly protected speech, Chinen asked for witnesses and documents that supported Plaintiff's claim that the speech was communicated to Chinen.  The interrogatories expressly stated that Chinen was trying to ascertain what evidence Plaintiff had that she had knowledge of the speech when she decided not to renew Plaintiff's contract.  In each case, Plaintiff responded that he had no evidence.  Plaintiff also confirmed his lack of evidence during his deposition testimony.

Chinen asserts that Plaintiff's claims were factually baseless from the outset, but she concedes that the claims could have been considered likely to have evidentiary support when Plaintiff filed the original Complaint.  By the time Plaintiff filed the TAC, however, he had a reasonable opportunity to

conduct discovery, but still had no factual support.  Chinen
therefore argues that Plaintiff violated Rule 11 by filing the
TAC and by refusing to dismiss it after Chinen noted its
deficiency.  Chinen served an unfiled copy of the Rule 11 Motion
on Plaintiff on June 22, 2009.  She therefore requests attorney's
fees incurred after the filing of the TAC.

In his memorandum in opposition to the Rule 11 Motion,
Plaintiff argues that he had adequate facts to justify a
reasonable expectation that discovery would produce statements
from his co-workers, the archeological community, and the native
Hawaiian community which showed that Chinen's reasons in the June
1, 2006 letter for not renewing his contract were pretext.
Plaintiff had discovery requests prepared soon after filing the
original Complaint, but Defendants objected to discovery because
of the pending motions to dismiss.  Thus, Plaintiff could not
conduct discovery until spring and summer 2009.

Plaintiff asserts that Chinen's Rule 11 Motion is based
merely on the fact that she prevailed on summary judgment and
nothing in the Summary Judgment Order supports sanctions under
Rule 11.  The factual theory of Plaintiff's case was that
Chinen's June 1, 2006 letter was pretext for the non-renewal of
his contract and that the real reason she did not renew his
contract was that he pointed out violations of the law.  Although
the June 1, 2006 letter stated that Chinen received complaints

12

from SHPD staff, the archeological community, and the native
Hawaiian community about Plaintiff making up policy, Chinen
denied receiving information from these groups in her answer to
the TAC.  Chinen filed her Motion for Summary Judgment and served
an un-filed Rule 11 Motion before Plaintiff had the opportunity
to conduct discovery.  Thereafter, Plaintiff took ten
depositions, including Chinen, McMahon, Thielen, MaryAnn Maigrey,
Bob Matsuda, Bob Awana, Ashley Chinen, Dr. Kennedy,
Keola Lindsey, and Kaleo Park.  The depositions showed that
Plaintiff did not make up policy, thus proving that Chinen was
lying in the June 1, 2009 letter.  The discovery, however, was
inconclusive about Chinen's knowledge of Plaintiff's free speech.

     As to Plaintiff's statements that SHPD should obey the
law, Plaintiff argues that he did not make these statements as an
employee because he did not have the responsibility or authority
to give Chinen legal advice.  Further, Plaintiff argued for an
extension of existing law by contending that his protected speech
included his refusal to violate the laws himself.

     Plaintiff emphasizes that Rule 11 sanctions are not
available to every party who prevails on summary judgment, and he
argues that an award of attorney's fees in a case like this one
would chill the filing of civil rights claims.  Finally,
Plaintiff argues that, even if Chinen had a legal or factual
basis for the Rule 11 Motion, the fees she requests are not

13

reasonable.  Plaintiff states that he moves for sanctions against
Mr. Wynhoff because the Rule 11 Motion is frivolous.  [Mem. in
Opp. to Rule 11 Motion at 3.]

**DISCUSSION**

I.  **Legal Standards**

A.  **Entitlement to Attorney's Fees Pursuant to § 1988**

In an action brought pursuant to 42 U.S.C. § 1983, "the
court, in its discretion, may allow the prevailing party, other
than the United States, a reasonable attorney's fee as part of
the costs[.]"  42 U.S.C. § 1988(b).  "A prevailing defendant may
recover attorneys' fees when a § 1983 plaintiff's claims are
groundless, without foundation, frivolous, or unreasonable.  The
terms 'frivolous', 'unreasonable' and 'without foundation' as
used in this context do not have appreciably different meanings."
Alaska Right to Life Political Action Comm. v. Feldman, 504 F.3d
840, 852 (9th Cir. 2007) (citations and quotation marks omitted).
The prevailing defendant may also be awarded fees when the
plaintiff continued to litigate a claim after it clearly became
frivolous, unreasonable, or groundless.  See Thomas v. City of
Tacoma, 410 F.3d 644, 647-48 (9th Cir. 2005) (quoting
Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 422 (1978)).

For example, the Ninth Circuit has affirmed an award of
attorney's fees where the ultimate ruling in the defendant's
favor was "obvious" and the claim was "wholly without merit".

See Alaska Right to Life, 504 F.3d at 852 (citations and quotation marks omitted).  The Ninth Circuit has also affirmed the award where the complaint "patently failed to state a claim" and lacked any factual basis.  See Price v. Hawaii, 939 F.2d 702, 709 (9th Cir. 1991).

Thus, an award of attorney's fees to a prevailing defendant is not the general rule.  The United States Supreme Court has stated:

> it is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. . . . Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing a suit.

Christiansburg Garment Co. v. E.E.O.C., 434 U.S. 412, 421-22 (1978); see also Hughes v. Rowe, 449 U.S. 5, 14 (1980) ("The fact that a plaintiff may ultimately lose his case is not in itself a sufficient justification for the assessment of fees.").

## B. **Rule 11**

Federal Rule of Civil Procedure 11 states, in pertinent part:

> By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
> (1) it is not being presented for any improper purpose, such as to harass, cause

15

> unnecessary delay, or needlessly increase the cost
> of litigation;
>     (2) the claims, defenses, and other legal
> contentions are warranted by existing law or by a
> nonfrivolous argument for extending, modifying, or
> reversing existing law or for establishing new
> law;
>     (3) the factual contentions have evidentiary
> support or, if specifically so identified, will
> likely have evidentiary support after a reasonable
> opportunity for further investigation or
> discovery; and
>     . . . .

Fed. R. Civ. P. 11(b).

When ruling on a Rule 11 Motion, "[i]f warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion."  Fed. R. Civ. P. 11(c)(2).  Rule 11 also states:

> A sanction imposed under this rule must be limited
> to what suffices to deter repetition of the
> conduct or comparable conduct by others similarly
> situated.  The sanction may include nonmonetary
> directives; an order to pay a penalty into court;
> or, if imposed on motion and warranted for
> effective deterrence, an order directing payment
> to the movant of part or all of the reasonable
> attorney's fees and other expenses directly
> resulting from the violation.

Fed. R. Civ. P. 11(c)(4).

The Ninth Circuit has stated:

> The standard governing both the "improper purpose"
> and "frivolous" inquiries is objective.  [T]he
> subjective intent of the . . . movant to file a
> meritorious document is of no moment.  The
> standard is reasonableness.  The "reasonable man"
> against which conduct is tested is a competent
> attorney admitted to practice before the district
> court.

16

G.C. & K.B. Invs., Inc. v. Wilson, 326 F.3d 1096, 1109 (9th Cir.
2003) (citations and quotation marks omitted) (alterations in
original).  "The pleader, at a minimum, must have a good faith
argument for his or her view of what the law is, or should be.  A
good faith belief in the merit of a legal argument is an
objective condition which a competent attorney attains only after
reasonable inquiry."  King v. Idaho Funeral Serv. Ass'n, 862 F.2d
744, 747 (9th Cir. 1988) (citation and quotation marks omitted).
"Where . . . the complaint is the primary focus of Rule 11
proceedings, a district court must conduct a two-prong inquiry to
determine (1) whether the complaint is legally or factually
baseless from an objective perspective, and (2) if the attorney
has conducted a reasonable and competent inquiry before signing
and filing it."  Christian v. Mattel, Inc., 286 F.3d 1118, 1127
(9th Cir. 2002) (citation and quotation marks omitted).

## II.  **Plaintiff's Allegedly Protected Statements**

        Based upon the district judge's analysis in the Summary
Judgment Order, the statements that Plaintiff based his First
Amendment retaliation claim in the TAC[3] upon can be divided into
three categories: 1) statements that Plaintiff made as a public
employee; [Summary Judgment Order at 9-20;] 2) statements that

---

        [3] Insofar as Chinen only seeks § 1988 attorney's fees and
Rule 11 sanctions from the filing of the TAC forward, this Court
will not address whether any of the prior complaints or filings
warranted § 1988 attorney's fees or Rule 11 sanctions.

Plaintiff made after Chinen decided not to renew Plaintiff's contract; [id. at 20-22;] and 3) statements that Plaintiff made before Chinen's decision but which she was unaware of when she made the decision. [Id. at 22-28.] The Court will examine each category of statements to determine whether it supports attorney's fees pursuant to § 1988 and/or Rule 11 sanctions.

A. **Statements as a Public Employee**

1. **Statements at Meetings Pursuant to Plaintiff's Official Responsibilities**

The First Amendment retaliation claim in Plaintiff's TAC is based upon statements he made at two meetings which he later acknowledged that he spoke at pursuant to his official responsibilities. [Chinen's Amended Separate & Concise Statement of Facts in Supp. of Chinen's Motion for Summary Judgment ("Chinen Am. CSF"), filed 8/18/09 (dkt. no. 165) at ¶¶ 10, 14; Pltf.'s Separate Concise Statement of Facts in Supp. of Pltf.'s Mem. in Opp. to Chinen's Motion for Summary Judgment ("Pltf. CSF") at ¶¶ 10, 14.] "The first meeting occurred on September 28, 2005 and concerned improvements at Kawaihae Harbor for the 'Superferry.' [TAC at] ¶¶ 31-37. Plaintiff was invited to and spoke at the meeting as a representative of the SHPD." [Summary Judgment Order at 16 (citation omitted).] He spoke about the preservation of archeological sites in the area, the need for a current survey, and his desire for the Department of Hawaiian Home Lands and other Hawaiian associations to be involved. [Id.

(quoting Chinen's Motion CSF,[4] Ex. 7 at 4).]

> The second meeting took place on October 5, 2005.
> Plaintiff gave a speech to the Society for
> Hawaiian Archeology in his capacity as the Branch
> Chief Archeologist.  3d Am. Compl. ¶¶ 38-41;
> Chinen's Mot. Am. CSF ¶ 14; Pl.'s Opp'n CSF ¶ 14.
> In the speech, Plaintiff discussed his plans to
> streamline the SHPD's review process so that it
> would run more efficiently.  Chinen's Mot. CSF,
> Ex. 9 at 1-2.

[Id. at 16-17.]

Brown II clearly put Plaintiff on notice that
statements he made pursuant to his job responsibilities are not
protected by the First Amendment.

> [A]n employee's speech is only protected if he
> spoke "as a citizen upon matters of public
> concern" rather than "as an employee upon matters
> only of personal interest."  Thomas v. City of
> Beaverton, 379 F.3d 802, 808 (9th Cir. 2004)
> (quoting Roe v. City of San Diego, 356 F.3d 1108,
> 1112 (9th Cir. 2004)); see also Connick v. Myers,
> 461 U.S. 138, 146-47, 103 S.Ct. 1684, 75 L.Ed.2d
> 708 (1983).  "'Statements are made in the
> speaker's capacity as citizen if the speaker had
> no official duty to make the questioned
> statements, or if the speech was not the product
> of performing the tasks the employee was paid to
> perform.'"  Eng v. Cooley, No. 07-56055, 2009
> U.S.App. LEXIS 577, at *22, 2009 WL 81870 (9th
> Cir. Jan. 14, 2009) (quoting Posey v. Lake Pend
> Oreille Sch. Dist. No. 84, 546 F.3d 1121, 1127 n.2
> (9th Cir. 2008)). . . .  If the allegations
> demonstrate an official duty to utter the speech
> at issue, then the speech is unprotected.  Cf. id.
> at *23.

Brown II, 2009 WL 330209, at *7.

---

[4] The exhibits in support of Chinen's Motion for Summary
Judgment are attached to her original Concise Statement of Facts,
filed on June 15, 2009 (dkt. no. 126).

The TAC's description of the statements Plaintiff made at these meetings clearly indicates that Plaintiff spoke at the meetings pursuant to his official duties.  According to the TAC, at the September 28, 2005 meeting concerning improvements at Kawaihae Harbor, Plaintiff stated, *inter alia*, "While no harbor plans, road plans, signage, nor parking plans for the Superferry have been reviewed by the Branch so far, <u>the State Historic Preservation Division will be actively involved</u> with determining preservation measures for archaeological sites in the development area . . . ."  [TAC at ¶ 31 (emphasis added).]  Thus, Plaintiff's speech concerned SHPD's official involvement in the improvement process.

According to the TAC, at the October 8, 2005 meeting of the Society for Hawaiian Archeology, Plaintiff stated, *inter alia*, that SHPD's "current mode of review is inefficient."  [<u>Id.</u> at ¶ 38.]  He also stated that he would not continue "past SHPD practices of 'rubber stamping' in violation of federal laws" in the review process, and that; he intended to "require compliance with all applicable regulations."  [<u>Id.</u> at ¶ 39.]  The TAC indicates that Plaintiff understood his official to include the application of federal laws and regulations to SHPD's operations.  [<u>Id.</u> at ¶¶ 21-26.]

### a.    <u>Attorney's Fees Pursuant to § 1988</u>

Based on the district judge's rulings in <u>Brown II</u> and

the allegations in the TAC, it was obvious that, when he filed the TAC, Plaintiff's First Amendment retaliation claim was wholly without merit to the extent that it was based upon statements that he made as a public employee pursuant to his official responsibilities because such statements are not protected by the First Amendment.  See Alaska Right to Life, 504 F.3d at 852 (affirming an award of attorney's fees where the ultimate ruling in the defendant's favor was "obvious" and the claim was "wholly without merit").  This Court therefore FINDS that Plaintiff's First Amendment retaliation claim was frivolous to the extent that it was based on Plaintiff's statements at the September 28, 2005 Kawaihae Harbor meeting and the October 8, 2005 Society of Hawaiian Archaeology meeting.  This Court RECOMMENDS that the district judge GRANT Chinen's request for § 1988 attorney's fees related to this portion of the retaliation claim from the filing of the TAC.

### b.   Rule 11 Sanctions

Similarly, at the time Plaintiff filed the TAC, it was clear from the contents of the statements and the circumstances under which Plaintiff made them that his statements at the September 28, 2005 meeting and the October 8, 2005 meeting were made in Plaintiff's capacity as a public employee.  The district judge's prior rulings clearly established that statements he made as a public employee were not protected by the First Amendment.

Thus, insofar as Plaintiff's retaliation claim was based on these statements, it was legally and factually baseless from an objective standard.  Further, insofar as the facts and legal analysis necessary to evaluate this portion of the retaliation claim were readily available when Plaintiff filed the TAC, this Court finds that Plaintiff's counsel failed to conduct a reasonable and competent inquiry before signing and filing the TAC.  Plaintiff's retaliation claim was not warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law, or for the establishment of new law.  This Court therefore FINDS that the signing and filing of the TAC, to the extent that the First Amendment retaliation claim was based on Plaintiff's statements at the September 28, 2005 meeting and the October 8, 2005 meeting, violated Rule 11(b)(2) and that sanctions are warranted against Plaintiff's counsel pursuant to Rule 11(c)(1).

The Court RECOMMENDS that the district judge ORDER Mr. Beatty to pay a $500.00 penalty to the district court.  This Court finds that this sanction is sufficient to deter Mr. Beatty from filing similar frivolous claims on behalf of his clients and to deter comparable conduct by other similarly situated attorneys.  <u>See</u> Fed. R. Civ. P. 11(c)(4).

### 2.   **Other Statements Made Pursuant to Plaintiff's Official Duties**

Plaintiff's other complaints about SHPD's allegedly

illegal practices generally involved objections to Chinen's decisions on development projects, such as permitting.  These statements addressed the review process which was within Plaintiff's job duties.  [Summary Judgment Order at 17-18.] Plaintiff also "objected when Chinen 'coerced' him to represent her, the SHPD, and the State in matters pertaining to the [Wal-Mart] project."  [Id. at 20 (citing 3d Am. Compl. ¶ 30.b.).]  The district judge found that Plaintiff's objections about this coercion occurred in the course of Plaintiff's public relations duties and in advising his supervisor.  [Id.]

    In opposing Chinen's Motion for Summary Judgment, Plaintiff contested the scope of his official duties.  He asserted that he was not provided with a job description when he began work and that he was not given the authority to carry out tasks that were supposed to be within his job description.  Thus, even if such statements should have been within the scope of his job description, they were not within the scope of his job as he actually performed it.  The district judge ultimately rejected this argument, noting that:

> Plaintiff does not dispute that, as part of his administrative duties, he was responsible for directing investigations and reviews, evaluating and making recommendations for areas of archeological importance, and recommending standards and priorities for historic preservation projects.  [Pltf.'s Motion for Recon., Decl. of David Brown, filed 9/5/09 (dkt. no. 188-1), at] ¶ 25.  In fact, he concedes that Chinen often disregarded his recommendations for areas of

archeological importance, which suggests that he made those recommendations pursuant to his official duties.  Id. ¶ 26.  Furthermore, while Plaintiff makes much of the fact that he was not allowed to consult directly with the State Deputy Attorney General assigned to the SHPD, he acknowledges that he was specifically instructed by Chinen to raise any questions or concerns of a legal nature with her.  Id. ¶ 8.  Thus, to the extent that Plaintiff objected to Chinen's permitting decisions based on his legal concerns, he was plainly acting pursuant to his official responsibilities.

[Summary Judgment Order at 18-19.]

### a.    Attorney's Fees Pursuant to § 1988

Although the district judge ultimately rejected this argument and found that the statements were made pursuant to Plaintiff's official duties, this Court cannot find that Plaintiff's claim in the TAC based upon those statements was groundless, without foundation, frivolous, or unreasonable, nor does this Court find that the claim became so during the course of litigation.  For purposes of § 1988, this Court FINDS that, although the claim was unsuccessful, Plaintiff had a reasonable basis for raising it in the TAC and litigating it through the grant of summary judgment in Chinen's favor.  This Court therefore RECOMMENDS that the district judge DENY Chinen's Fees Motion as to the portion of Plaintiff's retaliation claim in the TAC based upon statements which the district found to have been made in the course of Plaintiff's official duties, other than the statements at the September 28, 2005 and October 8, 2005

24

meetings.

### b. <u>Rule 11 Sanctions</u>

Similarly, insofar as this Court finds that Plaintiff had a reasonable basis for: 1) raising a retaliation claim in the TAC based upon other statements which the district found to have been made in the course of Plaintiff's official duties; and 2) litigating the claim based upon those statements through the grant of summary judgment in Chinen's favor, this Court FINDS that Plaintiff's counsel did not violate Rule 11(b) in bringing and litigating that portion of the retaliation claim.  This Court therefore RECOMMENDS that the district judge DENY Chinen's Rule 11 Motion as to the portion of Plaintiff's retaliation claim in the TAC based upon statements which the district found to have been made in the course of Plaintiff's official duties, other than the statements at the September 28, 2005 and October 8, 2005 meetings.

### B. <u>Statements After Chinen's Decision</u>

Plaintiff's TAC alleged that Chinen and the State violated his First Amendment rights because critical statements about the SHPD that he made to a union representative, the Hawai'i Legislature, and Robert Matsuda, were substantial or motivating factors in the decision not to renew his employment contract.  [TAC at ¶¶ 48-50, 144, 150.]  The TAC itself states that Plaintiff made the statements to the Legislature and

Mr. Matsuda after his termination date.  [TAC at ¶¶ 144, 150.]
When he responded to Chinen's Motion for Summary Judgment,
Plaintiff acknowledged that he made the statements to the union
official after his termination date.  [Chinen's Amended Separate
& Concise Statement of Facts in Supp. of Chinen's Motion for
Summary Judgment ("Chinen Am. CSF"), filed 8/18/09 (dkt. no. 165)
at ¶ 23; Pltf.'s Separate Concise Statement of Facts in Supp. of
Pltf.'s Mem. in Opp. to Chinen's Motion for Summary Judgment
("Pltf. CSF") at ¶ 23.]  The district judge therefore found that
these statements could not have been substantial or motivating
factors in Chinen's decision not to renew Plaintiff's contract.
[Summary Judgment Order at 22.]

        In Brown III, the district judge clearly put Plaintiff
on notice that statements made after Chinen's decision not to
renew Plaintiff's contract could not support a First Amendment
retaliation claim.  Although the district judge denied the motion
to dismiss the SAC as to the portion of the retaliation claim
based upon Plaintiff's statements to Robert Matsuda and the
Legislature, see Brown II, 2009 WL 330209, at *12 (citing SAC at
¶¶ 90, 96, 98-99), the district judge also noted:

        There also appears to be a factual question as to
        whether Plaintiff's statement to Matsuda was a
        substantial or motivating factor in the decision
        not to renew his employment.  The Second Amended
        Complaint alleges that the statement occurred
        during Plaintiff's union grievance period.  (2d
        Am. Compl.¶ 96.)  It does not allege when that
        period occurred, but it would be logical for that

> period to have occurred after Plaintiff learned
> that his employment was not renewed, such that he
> could assert a grievance as to that decision.

Id. at *11 n.2.  Further, in granting Plaintiff leave to amend

the SAC, the district judge stated: "This Court assumes that, if

Plaintiff agrees that his statements to Matsuda and the

legislature were made after the decision not to renew his

employment, he will not premise his First Amendment retaliation

claim upon those statements."  Id. at *19.

### 1.   Attorney's Fees Pursuant to § 1988

Thus, when he filed the TAC, it was obvious that

Plaintiff's First Amendment retaliation claim was wholly without

merit to the extent that it was based upon statements that he

made after Chinen had already decided not to renew Plaintiff's

contract because it was impossible for these statements to be

substantial or motivating factors in the decision.  See Alaska

Right to Life, 504 F.3d at 852 (affirming an award of attorney's

fees where the ultimate ruling in the defendant's favor was

"obvious" and the claim was "wholly without merit").  This Court

therefore FINDS that Plaintiff's First Amendment retaliation

claim was frivolous to the extent that it was based on

Plaintiff's statements to a union representative, Plaintiff's

statements before the Hawai'i Legislature, and Plaintiff's

statements to Robert Matsuda.  This Court RECOMMENDS that the

district judge GRANT Chinen's request for attorney's fees related

27

to this portion of the retaliation claim pursuant to § 1988 from the filing of the TAC.

### 2.   **Rule 11 Sanctions**

Similarly, at the time Plaintiff filed the TAC, it was clear that statements made after Chinen's decision not to renew Plaintiff's contract could not have been substantial or motivating factors in the decision.  Thus, insofar as Plaintiff's retaliation claim was based on these statements, it was legally and factually baseless from an objective standard.  Further, insofar as the facts and legal analysis necessary to evaluate this portion of the retaliation claim were readily available when Plaintiff filed the TAC, this Court finds that Plaintiff's counsel failed to conduct a reasonable and competent inquiry before signing and filing the TAC.  Plaintiff's retaliation claim was not warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law, or for the establishment of new law.  This Court therefore FINDS that the signing and filing of the TAC, to the extent that the First Amendment claim was based on Plaintiff's statements after the decision not to renew his contract, violated Rule 11(b)(2) and that sanctions are warranted against Plaintiff's counsel pursuant to Rule 11(c)(1).

The Court RECOMMENDS that the district judge ORDER Mr. Beatty to pay a $500.00 penalty to the district court.  This

Court finds that this sanction is sufficient to deter Mr. Beatty
from filing similar frivolous claims on behalf of his clients and
to deter comparable conduct by other similarly situated
attorneys.  See Fed. R. Civ. P. 11(c)(4).

### C. **Statements Which Chinen Was Not Aware Of**

The final category of statements which Plaintiff based
his retaliation claim on consists of statements which the
district judge ultimately found that Chinen was not aware of when
she decided not to renew Plaintiff's contract.  These are:

> statements regarding unethical and illegal
> practices at the SHPD to: (1) an auditor from a
> private accounting firm that was performing an
> audit of the SHPD; (2) a co-worker by the name of
> Sunny Greer; (3) individuals in a leadership class
> he took at the University of Hawai'I; (4)
> "[v]arious people in the community" and "many
> friends"; and (5) Dr. John Peterson, a former
> member of the advisory council on Historic
> Preservation.

[Summary Judgment Order at 22 (citing 3d Am. Compl. ¶¶ 42-47,
51-59, 105-06, 143, 152, 153) (alteration in original).]

In his opposition to Chinen's Motion for Summary
Judgment, Plaintiff conceded that he did not have any direct
evidence showing that Chinen was aware of these statements when
she decided not to renew his contract.  [Id. (citing Chinen's
Mot. Am. CSF ¶¶ 21, 26, 29-30, 34, 37; Pl.'s Opp'n CSF ¶¶ 21, 26,
29-30, 34, 37).]  He also acknowledged that he made these
statements under circumstances such that he did not believe the
people he made them to would relay the statements to Chinen.

29

[Id. at 27 (citing Chinen's Mot. Am. CSF ¶¶ 24, 33, 36; Chinen's Mot. CSF, Ex. 10 at 57:4-23 (Pl.'s Dep.); Pl.'s Opp'n CSF ¶¶ 24, 33, 36.)]  Instead, Plaintiff asserted that there was a reasonable inference that Chinen knew about the statements based on her memorandum regarding the June 1, 2006 meeting.[5]  [Id. at 22-23.]

        In the Summary Judgment Order, the district judge rejected this argument, noting that, although the memorandum supported an inference that Chinen spoke to SHPD staff about Plaintiff, the only staff person who Plaintiff allegedly made protected statements about SHPD's illegal practices to is Sunny Greer.  [Id. at 25 (citing 3d Am. Compl. ¶¶ 42-47).]  Ms. Greer testified that she did not disclose Plaintiff's concerns to Chinen.  [Pltf.'s CFS, Greer Depo. at 98:11-15.]  Plaintiff arguably could have obtained evidence during discovery which established that Ms. Greer did in fact relay Plaintiff's complaints to Chinen, but Plaintiff ultimately did not present any evidence to contradict Ms. Greer's testimony on this issue.

        The June 1, 2006 memorandum also supports an inference that Chinen spoke to private regulated firms, the archeology community, and the native Hawaiian community about Plaintiff, but she spoke with them about his unilateral changes to SHPD policy;

---

        [5] The relevant portions of the memorandum are reprinted in the Summary Judgment Order at pages 23-25.

there is no indication that she spoke with them about Plaintiff's statements concerning allegedly illegal SHPD practices.  [Summary Judgment Order at 26.]

Further, the auditor who Plaintiff spoke to does not fall within the categories of persons who the June 1, 2006 memorandum indicates Chinen spoke to about Plaintiff.  The auditor's report does not support Plaintiff's claim that Chinen was aware of his statements to the auditor because the report does not contain any of the complaints that Plaintiff made to the auditor.  [Id. at 27 (citing Chinen's Mot. Am. CSF ¶ 28; Pl.'s Opp'n CSF ¶ 28).]

Thus, by the time the district judge ruled on Chinen's Motion for Summary Judgment, the June 1, 2006 memorandum was the only evidence that Plaintiff had to raise a genuine issue of material fact as to Chinen's pre-decision awareness of Plaintiff's statements to the auditor, Ms. Greer, the leadership class, his friends and community members, and Dr. Peterson. [Opp. to Def. Melanie Chinen's Motion for Summary Judgment, filed 9/4/09 (dkt. no. 183), at 12-18.]  The district judge previously rejected Plaintiff's argument based on the June 1, 2006 memorandum in Brown II.  See 2009 WL 330209, at *12 n.3 ("[I]t would be unreasonable to infer that Chinen was aware of Plaintiff's complaints to his friends regarding illegal practices in light of her June 1, 2006 statement, because Chinen's

31

statement concerned not the SHPD's illegal practices, but rather Plaintiff's changing policy single-handedly.").

Thus, when Plaintiff filed the TAC, he was aware that the June 1, 2006 memorandum alone would not be sufficient to support his claim.  After filing the TAC, Plaintiff had the opportunity to conduct discovery to find other support, but he apparently did not find any.

### 1.   **Attorney's Fees Pursuant to § 1988**

Once it became apparent that the only evidence Plaintiff had to establish Chinen's pre-decision knowledge of his statements to the auditor, Ms. Greer, the leadership class, his friends and community members, and Dr. Peterson was the June 1, 2006 memorandum, it was obvious that Plaintiff's First Amendment retaliation claim was wholly without merit as to those statements because the district judge had already ruled that the memorandum alone was insufficient.  See Alaska Right to Life, 504 F.3d at 852 (affirming an award of attorney's fees where the ultimate ruling in the defendant's favor was "obvious" and the claim was "wholly without merit").  This Court therefore FINDS that Plaintiff's First Amendment retaliation claim was frivolous to the extent that it was based on Plaintiff's statements to the auditor, Ms. Greer, the leadership class, his friends and community members, and Dr. Peterson.  This Court RECOMMENDS that the district judge GRANT Chinen's § 1988 request for attorney's

fees related to this portion of the retaliation claim from the
expiration of the discovery deadline on August 20, 2009.

2.  **Rule 11 Sanctions**

Similarly, although Plaintiff's factual contention that
Chinen was aware of his statements to the auditor, Ms. Greer, the
leadership class, his friends and community members, and
Dr. Peterson when she decided not to renew Plaintiff's contract
had no evidentiary support at the close of discovery, Plaintiff
continued to litigate the claim based on those statements.  This
Court therefore FINDS that the continued litigation of this
portion of the First Amendment retaliation claim after the close
of discovery violated Rule 11(b)(3) and that sanctions are
warranted against Plaintiff's counsel pursuant to Rule 11(c)(1).

The Court RECOMMENDS that the district judge ORDER
Mr. Beatty to pay a $500.00 penalty to the district court.  This
Court finds that this sanction is sufficient to deter Mr. Beatty
from continuing to litigate claims without evidentiary support
and to deter comparable conduct by other similarly situated
attorneys.  See Fed. R. Civ. P. 11(c)(4).

D.  **Summary**

1.  **Attorney's Fees Pursuant to § 1988**

This Court has found Plaintiff's First Amendment
retaliation claim to be frivolous from the filing of the TAC as
to: statements made at the September 28, 2005 Kawaihae Harbor

33

meeting and the October 8, 2005 Society of Hawaiian Archaeology meeting; and statements made after Chinen's decision not to renew Plaintiff's contract.

This Court has found Plaintiff's First Amendment retaliation claim to be frivolous after the close of discovery on August 20, 2009 as to statements to the auditor, Ms. Greer, the leadership class, his friends and community members, and Dr. Peterson.

This Court has found that Plaintiff's First Amendment retaliation claim was not frivolous as to statements which the district judge found to have been made in the course of Plaintiff's official duties, other than the statements at the September 28, 2005 and October 8, 2005 meetings.

This Court therefore FINDS that Chinen, in her individual capacity, is entitled to an award of attorney's fees pursuant to § 1988.  This Court RECOMMENDS that the district judge award Chinen, in her individual capacity, twenty-five percent of her attorney's fees incurred from the filing of the TAC through the expiration of the discovery deadline on August 20, 2009, and fifty percent of her attorney's fees incurred after August 20, 2009.

## 2.  **Rule 11 Sanctions**

This Court has found that the following conduct violates Rule 11: 1) signing and filing the TAC with the

retaliation claim based on statements made at the September 28, 2005 Kawaihae Harbor meeting and the October 8, 2005 Society of Hawaiian Archaeology meeting; 2) signing and filing the TAC with the retaliation claim based on statements made after Chinen's decision not to renew Plaintiff's contract; 3) continuing to litigate the retaliation claim as to statements to the auditor, Ms. Greer, the leadership class, his friends and community members, and Dr. Peterson after it became apparent that the claim had no evidentiary support as to these statements.  This Court RECOMMENDS that the district judge ORDER Plaintiff's counsel to pay a $500.00 penalty to the district court for each violation, for a total of $1,500.00.

The Court notes that the district judge may award Chinen's reasonable expenses, including attorney's fees, incurred for the Rule 11 Motion, and Chinen's reasonable attorney's fees and expenses directly resulting from the Rule 11 violation.  See Fed. R. Civ. P. 11(c)(2), (4).  The Court, however, finds that no such awards are necessary because the recommended penalty against Mr. Beatty and the recommended award of attorney's fees pursuant to § 1988 is a sufficient deterrent.  See Fed. R. Civ. P. 11(c)(4) ("A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated.").

35

## III. **Calculation of Attorney's Fee Award**

Under federal law, reasonable attorney's fees are generally based on the traditional "lodestar" calculation set forth in Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  See Fischer v. SJB-P.D., Inc., 214 F.3d 1115, 1119 (9th Cir. 2000). The court must determine a reasonable fee by multiplying "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate."  Hensley, 461 U.S. at 433.  Second, the court must decide whether to adjust the lodestar amount based on an evaluation of the factors articulated in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir. 1975), which have not been subsumed in the lodestar calculation.  See Fischer, 214 F.3d at 1119 (citation omitted).

The factors the Ninth Circuit articulated in Kerr are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

Kerr, 526 F.2d at 70.  Factors one through five have been subsumed in the lodestar calculation.  See Morales v. City of San Rafael, 96 F.3d 359, 364 n.9 (9th Cir. 1996).  Further, the Ninth

Circuit, extending <u>City of Burlington v. Dague</u>, 505 U.S. 557, 567 (1992), held that the sixth factor, whether the fee is fixed or contingent may not be considered in the lodestar calculation. <u>See Davis v. City & County of San Francisco</u>, 976 F.2d 1536, 1549 (9th Cir. 1992), <u>vacated in part on other grounds</u>, 984 F.2d 345 (9th Cir. 1993).  Once calculated, the "lodestar" is presumptively reasonable.  <u>See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air</u>, 483 U.S. 711, 728 (1987); <u>see also Fischer</u>, 214 F.3d at 1119 n.4 (stating that the lodestar figure should only be adjusted in rare and exceptional cases).

Chinen requests the following lodestar amount for work counsel performed from the filing of the TAC:

| ATTORNEY | HOURS | RATE | LODESTAR |
|----------|-------|------|----------|
| William Wynhoff | 317.9 | $250 | $79,475.00 |

[Fees Motion, Decl. of William J. Wynhoff ("Wynhoff Decl."), Exh. 1.]  Mr. Wynhoff states that he has been licensed to practice law in the State of Hawai'i since 1979.  [Wynhoff Decl. at ¶ 9.]

A.    **Reasonable Hourly Rate**

In determining whether an hourly rate is reasonable, the Court considers the experience, skill, and reputation of the attorney requesting fees.  <u>See Webb v. Ada County</u>, 285 F.3d 829, 840 & n.6 (9th Cir. 2002).  The reasonable hourly rate should reflect the prevailing market rates in the community.  <u>See id.</u>; <u>see also Gates v. Deukmejian</u>, 987 F.2d 1392, 1405 (9th Cir.

37

1992), as amended on denial of reh'g, (1993) (noting that the rate awarded should reflect "the rates of attorneys practicing in the forum district").

In addition to their own statements, attorneys are required to submit additional evidence that the rate charged is reasonable.  See Jordan v. Multnomah County, 815 F.2d 1258, 1263 (9th Cir. 1987).  Chinen submitted a 2006 list from the Pacific Business News of twenty-five Hawai'i law firms, most of which reported the hourly rates charged by their partners and associates.  [Exh. 2 to Wynhoff Decl.]  In addition, this Court is familiar with the prevailing rates in the community and the hourly rates awarded by the district court in other cases.  The Court notes that Plaintiff did not address whether Mr. Wynhoff's requested hourly rate was reasonable.

Based on the submissions in this case and this Court's knowledge of the prevailing rates in the community in other cases, this Court finds Mr. Wynhoff's requested hourly rate of $250 to be manifestly reasonable.

## B.   **Hours Reasonably Expended**

Beyond establishing a reasonable hourly rate, a party seeking attorney's fees bears the burden of proving that the fees and costs taxed are associated with the relief requested and are reasonably necessary to achieve the results obtained.  See Tirona v. State Farm Mut. Auto. Ins. Co., 821 F. Supp. 632, 636 (D. Haw.

1993) (citations omitted).  A court must guard against awarding

fees and costs which are excessive, and must determine which fees

and costs were self-imposed and avoidable.  See id. at 637

(citing INVST Fin. Group v. Chem-Nuclear Sys., 815 F.2d 391, 404

(6th Cir. 1987)).  A court has "discretion to 'trim fat' from, or

otherwise reduce, the number of hours claimed to have been spent

on the case."  Soler v. G & U, Inc., 801 F. Supp. 1056, 1060

(S.D.N.Y. 1992) (citation omitted).  Time expended on work deemed

"excessive, redundant, or otherwise unnecessary" shall not be

compensated.  See Gates, 987 F.2d at 1399 (quoting Hensley, 461

U.S. at 433-34).

          Mr. Wynhoff submitted a time log of his work on this

case from the filing of the TAC through the filing of the instant

motions.  The Court notes that Mr. Wynhoff has edited his time

log to exclude work that is: attributable solely to Plaintiff's

state case; clerical in nature; or arguably duplicative of work

done by counsel for the State Defendants.  In addition, Mr.

Wynhoff voluntarily excluded brief phone calls and e-mail

correspondence.  [Wynhoff Decl. at ¶¶ 7-8.]  The Court

appreciates Mr. Wynhoff's efforts to exclude non-compensable time

and the time submitted was, for the most part, reasonable and

necessary.  The Court, however, finds that some reductions are

necessary.

### 1. __Work on the NAGPRA Claim__

Mr. Wynhoff spent 2.8 hours on June 15, 2009 researching NAGPRA and 0.2 hours on September 14, 2009 reviewing the "NAGPRA reply". [Exh. 1 to Wynhoff Decl. at 1, 3.] He also spent 1.2 hours on June 22, 2009 reviewing "plaintiffs motion and concise statement". [Id. at 3.] This apparently refers to Plaintiff's Motion for Summary Judgment on NAGPRA Claims, filed on June 19, 2009. This work is not compensable because Plaintiff did not bring the NAGPRA claim against Chinen in her individual capacity. [TAC at pg. 33.] The Court will therefore deduct 4.2 hours from Mr. Wynhoff's time for work relating to the NAGPRA claim.

### 2. __Excessive Time__

Mr. Wynhoff spent almost 20.0 hours reviewing Plaintiff's documents and almost 18.0 hours reviewing Chinen's documents. [Exh. 1 to Wynhoff Decl. at 1.] Although there was substantial document production in this case, and many of the documents were relevant to the case against Chinen in her individual capacity, the Court finds this time to be excessive. The Court will therefore deduct 15.0 hours from Mr. Wynhoff's time for excessive document review.

The Court also finds the following time to be excessive: 5.7 hours drafting a letter to this Court regarding the trial date; 9.2 hours drafting Chinen's settlement conference

statement for the June 9, 2009 conference; and over 45.0 hours working on the Motion for Summary Judgment.  [Id. at 1, 3.]  The Court will apply the following deductions for these tasks: 4.0 hours for the trial date letter; 5.0 hours for the June 2009 settlement conference statement; and 15.0 hours for the Motion for Summary Judgment.

The Court finds the remainder of Mr. Wynhoff's time to be reasonable and necessary to the defense of the retaliation claim against Chinen in her individual capacity.

### C. **Total Lodestar Award**

Based on the foregoing, this Court finds that Chinen has established the appropriateness of an award of attorney's fees as follows:

| ATTORNEY | HOURS | RATE | LODESTAR |
|----------|-------|------|----------|
| *work from the filing of the TAC up to August 20, 2009:* | | | |
| William Wynhoff | 216.7 | $250 | $54,175.00 |
| | Award of 25% of total | | $13,543.75 |
| *work after August 20, 2009:* | | | |
| William Wynhoff | 58.0 | $250 | $14,500.00 |
| | Award of 50% of total | | $ 7,250.00 |
| | **TOTAL LODESTAR** | | **$20,793.75** |

The Court declines to adjust the award based on the remaining Kerr factors.

41

## IV.  __Plaintiff's Request for Sanctions__

Plaintiff argued in his memorandum in opposition to the Rule 11 Motion that Chinen's counsel should be sanctioned for filing a frivolous Rule 11 motion.  The Court cannot consider this request because it does not comply with Rule 11(c)(2), which states, in pertinent part:

> A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b).  The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets.

Moreover, insofar as this Court has found that Rule 11 sanctions are warranted against Plaintiff and his counsel, Chinen's Rule 11 Motion is not frivolous.

### CONCLUSION

In accordance with the foregoing, this Court, acting as Special Master, FINDS AND RECOMMENDS that the Motion for Award of Attorney's Fees and the Motion for Sanctions Pursuant to FRCP 11, filed on September 28, 2009 by Defendant Melanie Chinen in her individual capacity, be GRANTED IN PART AND DENIED IN PART.  The Court RECOMMENDS that the district judge AWARD Chinen, in her individual capacity, $20,793.75 in attorney's fees pursuant to 42 U.S.C. § 1988.  The Court further RECOMMENDS that the district judge SANCTION Plaintiff's counsel $1,500.00 pursuant to Federal

Rule of Civil Procedure 11.

      IT IS SO FOUND AND RECOMMENDED.

      DATED AT HONOLULU, HAWAII, February 26, 2010.



      /S/ Leslie E. Kobayashi
      Leslie E. Kobayashi
      United States Magistrate Judge

**DAVID BROWN V. MELANIE CHINEN, ET AL**; CIVIL NO. 07-00556 ACK-LEK; REPORT OF SPECIAL MASTER ON DEFENDANT MELANIE CHINEN'S MOTION FOR AWARD OF ATTORNEY'S FEES AND MOTION FOR SANCTIONS PURSUANT TO FRCP 11