IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| DAVID BROWN, | ) | Civ. No. 07-00556 ACK-LEK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| MELANIE CHINEN; LAURA THIELEN, | ) | |
| in her Official Capacity, NANCY | ) | |
| MCMAHON, in her Official | ) | |
| Capacity, STATE OF HAWAI'I, DOES | ) | |
| 1-25, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

**ORDER ADOPTING REPORT OF SPECIAL MASTER ON DEFENDANT MELANIE
CHINEN'S MOTION FOR AWARD OF ATTORNEY'S FEES AND MOTION FOR
SANCTIONS PURSUANT TO FRCP 11**

**BACKGROUND AND PROCEDURAL HISTORY**

On November 7, 2007, Plaintiff David Brown filed a

complaint against, <u>inter alios</u>, Defendants Melanie Chinen, in her

individual capacity and in her official capacity as the

Administrator of the State Historic Preservation Division

("SHPD") of the Department of Land and Natural Resources

("DLNR"), and the State of Hawaii ("State").  The complaint

asserted a number of claims, including a 42 U.S.C. § 1983 First

Amendment retaliation claim and a claim under the Native American

Graves and Repatriation Act ("NAGPRA"), 25 U.S.C. § 3001 <u>et seq.</u>

On May 14, 2008, the Court granted motions to dismiss filed by

Chinen and the State.  Brown v. Chinen ("Brown I"), Civ. No. 07-00556 ACK-LEK, 2008 U.S. Dist. LEXIS 39659 (D. Haw. May 14, 2008).  The Court dismissed Plaintiff's First Amendment retaliation claim and his NAGPRA claim, but granted him leave to amend.

On June 13, 2008, Plaintiff filed a first amended complaint, which realleged his First Amendment retaliation and NAGPRA claims.  On October 10, 2008, Plaintiff filed a motion to amend the first amended complaint, which included a copy of a second amended complaint.  The second amended complaint added as Defendants Nancy McMahon and Laura Thielen in their respective official capacities as the current Administrator of the SHPD and Director of the DLNR.  On October 24, 2008, the parties filed a stipulation to amend the first amended complaint.  On February 10, 2009, the Court granted in part and denied in part motions to dismiss the second amended complaint filed by Chinen and the State regarding the First Amendment retaliation and NAGPRA claims.  Brown v. Hawai'i ("Brown II"), Civ. No. 07-00556 ACK-LEK, 2009 U.S. Dist. LEXIS 10546 (D. Haw. Feb. 10, 2009).  The Court again granted Plaintiff leave to amend.

On March 12, 2009, Plaintiff filed a third amended complaint ("Third Amended Complaint," "3d Am. Compl.," or "TAC"), which reasserted the First Amendment retaliation claim in Count I and the NAGPRA claim in Count II.  Two motions for summary

judgment were filed with respect to the Third Amended Complaint.

On June 15, 2009, Chinen, in her individual capacity, filed a motion for summary judgment as to Plaintiff's First Amendment retaliation claim in Count I.  On June 19, 2009, Plaintiff filed a motion for summary judgment as to his NAGPRA claim in Count II.

On September 23, 2009, the Court granted Defendant Chinen's Motion for Summary Judgment as to Plaintiff's First Amendment retaliation claim in Count I and denied Plaintiff's Motion for Summary Judgment as to his NAGPRA claim.  Brown v. Hawaii, - - F. Supp. 2d - -, 2009 WL 5437673 (D. Haw. Sept. 23, 2009) ("Summary Judgment Order").  This Court dismissed Plaintiff's First Amendment retaliation claim in its entirety "having reviewed all of Plaintiff's statements and found that they were made pursuant to his official duties or were not substantial or motivating factors in the adverse employment action."  Id. at *11.

On September 28, 2009, Defendant Melanie Chinen, in her individual capacity, filed a Motion for Attorney's Fees ("Fees Motion") and a Motion for Sanctions Pursuant to FRCP 11 ("Rule 11 Motion") based upon Plaintiff's First Amendment retaliation claim.

A four-day trial was held on Plaintiff's NAGPRA claim between October 20, 2009 and October 27, 2009.  On November 13,

2009, the Court issued Findings of Fact and Conclusions of Law and Decision as to Plaintiff's NAGPRA claim.  The Court found that the State Defendants were entitled to judgment on the NAGPRA claim.

On February 26, 2010, Magistrate Judge Kobayashi issued a Report of Special Master Recommending that Defendant Melanie Chinen's Fees Motion and Rule 11 Motion be granted in part and denied in part ("Special Master's Report").

The Special Master summarized her findings as follows:

1.   Attorney's Fees Pursuant to § 1988
     This Court has found Plaintiff's First Amendment retaliation claim to be frivolous from the filing of the TAC as to: statements made at the September 28, 2005 Kawaihae Harbor meeting and the October 8, 2005 Society of Hawaiian Archaeology meeting; and statements made after Chinen's decision not to renew Plaintiff's contract.
     This Court has found Plaintiff's First Amendment retaliation claim to be frivolous after the close of discovery on August 20, 2009 as to statements to the auditor, Ms. Greer, the leadership class, his friends and community members, and Dr. Peterson.
     This Court has found that Plaintiff's first Amendment retaliation claim was not frivolous as to statements which the district judge found to have been made in the course of Plaintiff's official duties, other than the statements at the September 28, 2005 and October 8, 2005 meetings.
     This Court therefore FINDS that Chinen, in her individual capacity, is entitled to an award of attorney's fees pursuant to § 1988.  This Court RECOMMENDS that the district judge award Chinen, in her individual capacity, twenty-five percent of her attorney's fees incurred from the filing of the TAC through the expiration of the discovery deadline on August 20, 2009, and fifty percent of her attorney's fees incurred after August 20, 2009.
2.   Rule 11 Sanctions
     This Court has found that the following

4

conduct violates Rule 11: 1) signing and filing the TAC with the retaliation claim based on statements made at the September 28, 200 Kawaihae Harbor meeting and the October 8, 2005 Society of Hawaiian Archaeology meeting; 2) signing and filing the TAC with the retaliation claim based on statements made after Chinen's decision not to renew the Plaintiff's contract; 3) continuing to litigate the retaliation claim as to statements to the auditor, Ms. Greer, the leadership class, his friends and community members, and Dr. Peterson after it became apparent that the claim had no evidentiary support as to these statements.  This Court RECOMMENDS that the district judge ORDER Plaintiff's counsel to pay a $500.00 penalty to the district court for each violation, for a total of $1,500.00.

  The Court notes that the district judge may award Chinen's reasonable expenses, including attorney's fees, incurred for the Rule 11 Motion, and Chinen's reasonable attorney's fees and expenses directly resulting from the Rule 11 violation.  <u>See</u> Fed. R. Civ. P. 11(c)(2), (4).  The Court, however, finds that no such awards are necessary because the recommended penalty against Mr. Beatty and the recommended award of attorney's fees pursuant to § 1988 is a sufficient deterrent.  <u>See</u> Fed. R. Civ. P. 11(c)(4) ("A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated.").

Special Master's Report at 33-35.

  On March 12, 2010, Plaintiff filed a "Motion to Reconsider Report of Special Master on Defendant Melanie Chinen's Motion for Award of Attorney's Fees And Motion for Sanctions Pursuant to FRCP 11" ("Motion to Reconsider") and a memorandum in support of the Motion to Reconsider ("Motion Mem.").  On March 16, 2010, the Court clarified that Plaintiff's Motion to Reconsider would be construed as Objections to the Special Master's Report ("Plaintiff's Objections" or "Plaintiff's Obj.").

Defendant Melanie Chinen also filed Objections to the Report of Special Master ("Defendant's Objections" or "Defendant's Obj.").

On March 29, 2010, Plaintiff filed a Response in Support of Plaintiff's Motion for Reconsideration Redesignated as a Local Rule 53.2 Motion ("Plaintiff's Response").  Also on March 29, 2010, Defendant Melanie Chinen filed a Response to Plaintiff's Objections (Doc. 313) to Report of Special Master (Doc. 309) on Defendant Melanie Chinen's Motion for Award of Attorney's Fees (Doc. 207) and Motion for Sanctions Pursuant to FRCP 11 (Doc. 208) ("Defendant's Response").

## **STANDARD**

In acting on a special master's order, report, or recommendation, the district court must afford an opportunity to be heard and may receive evidence.  <u>See</u> Fed. R. Civ. P. 53(f)(1). The district court "may adopt or affirm, modify, wholly or partly reject or reverse, or resubmit to the master with instructions." <u>Id.</u>

The district court must decide de novo all objections to findings of fact and/or conclusions of law made or recommended by the special master.  <u>See</u> Fed. R. Civ. P. 53(f)(3) & (4) (amended in 2003 to change the standard of review for findings of fact made or recommended by a master); <u>see also</u> <u>Summers v. Howard University</u>, 374 F.3d 1188, 1195 n. 6 (D.C. Cir. 2004) (noting that Fed. R. Civ. P. 53 was amended in 2003 to provide for de

6

novo review of a special master's fact findings by the district court).  A special master's rulings on procedural matters are reviewed for abuse of discretion.  <u>See</u> Fed. R. Civ. P. 53(f)(5) and Advisory Committee Notes for 2003 Amendments.

### <u>DISCUSSION</u>

## I.   Attorney's Fees

A prevailing party may be awarded reasonable fees in lawsuit regarding a federal civil rights claim.  "In any action or proceeding to enforce a provision of section[] . . . 1983 . . . of this title, . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee . . . ."  42 U.S.C. § 1988(b) (2000).  The statute does not set forth separate standards for prevailing plaintiffs and prevailing defendants, but a differentiation has appeared in the case law.  <u>See</u> <u>Thomas v. City of Tacoma</u>, 410 F. 3d 644, 647 (9th Cir. 2005).

"[A] prevailing plaintiff 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'"  <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 429 (1983) (quoting S. Rep. No. 9401011, p. 4 (1976)).  Prevailing defendants, however, may only be awarded attorneys' fees pursuant to 42 U.S.C. § 1988(b) in "exceptional circumstances."  <u>Barry v. Fowler</u>, 902 F.2d 770, 773 (9th Cir. 1990).  Such circumstances exist when the court finds the plaintiff's civil rights claim is

"frivolous, unreasonable, or groundless, or that the plaintiff

continued to litigate after it clearly became so."

Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 422 (1978).

"An action becomes frivolous when the result appears obvious or

the arguments are wholly without merit."  Galen v. County of Los

Angeles, 477 F. 3d 652, 666 (9th Cir. 2007) (citing

Christiansburg, 434 U.S. at 422; Hughes v. Rowe, 449 U.S. 5, 14-

15 (1980) (per curiam)).  The Supreme Court has cautioned:

> it is important that a district court resist the
> understandable temptation to engage in post hoc
> reasoning by concluding that, because a plaintiff did
> not ultimately prevail, his action must have been
> unreasonable or without foundation . . . .  Even when
> the law or facts appear questionable or unfavorable at
> the outset, a party may have an entirely reasonable
> ground for bringing a suit.

Christiansburg, 434 U.S. at 422.

The Fifth Circuit has observed that "when speaking of

whether a defendant is entitled to attorneys' fees, the Supreme

Court describes a 'suit,' an 'action' and both a 'claim' and an

'action' as the proper quanta for determining frivolity, with

little guidance as to which is the final determinant."  Fox v.

Vice, 594 F. 3d 423, 428 (5th Cir. 2010).  The Ninth Circuit has

focused on "claim."  It has held that a § 1988 fee award is

proper when a plaintiff has joined distinct, although

interrelated, frivolous claims with non-frivolous claims.  Tutor-

Saliba Corp. v. City of Hailey, 452 F. 3d 1055, 1062-63 (9th Cir.

2006); see also Galen 477 F. 3d at 666 (concluding that

8

plaintiff's pursuit of his excessive bail claim was not frivolous but his continued pursuit of his Monell claim after he failed to uncover any evidence to support it during discovery was frivolous).

In its decision in Tutor-Saliba, the Ninth Circuit found guidance in the Supreme Court's Hensley decision.  Hensley held that plaintiffs could recover partial fees in situations where their unsuccessful claims were "distinct in all respects from [their] successful claims."  Hensley, 461 U.S. at 440.  The Supreme Court acknowledged that there is "no certain method of determining when claims are related or unrelated" and held that:

> the extent of a plaintiff's success is a crucial factor
> in determining the proper amount of an award of
> attorney's fees under 42 U.S.C. § 1988.  Where the
> plaintiff has failed to prevail on a claim that is
> distinct in all respects from his successful claims,
> the hours spent on the unsuccessful claim should be
> excluded in considering the amount of a reasonable fee.
> Where a lawsuit consists of related claims, a plaintiff
> who has won substantial relief should not have his
> attorney's fee reduced simply because the district
> court did not adopt each contention raised.  But where
> plaintiff achieved only limited success, the district
> court should award only that amount of fees that is
> reasonable in relation to the results obtained.

Hensley, 461 U.S. at 440.

The Ninth Circuit was also persuaded by the Eleventh Circuit's reasoning in Quintana v. Jenne, 414 F. 3d 1306 (11th Cir. 2005).  See Tutor-Saliba Corp., 452 F. 3d at 1064.  The Ninth Circuit agreed that it would "undermine the intent of Congress to allow plaintiffs to prosecute frivolous claims

9

without consequences merely because those claims were joined with unsuccessful claims that were not frivolous." Id. (citing Quintana, 414 F. 3d at 1312). The Quintana Court concluded that although the plaintiff's claims arose from a common set of facts, they were not intertwined because the plaintiff had distinguished the claims in his complaint and had advanced sufficiently distinct arguments. Id. In Quintana, the plaintiff had asserted a retaliation claim (which was found to be frivolous) and a racial discrimination claim (which was not). Quintana, 414 F. 3d at 1312

In Tutor-Saliba, the defendants operated an airport that had a weight restriction for its runways that prohibited the plaintiff's jet from using the airport. Id. at 1059. The plaintiff's complaint alleged the restriction violated "substantive due process, procedural due process, equal protection, and right to travel, and his rights under the Commerce Clause, the Airport and Airway Improvement Act of 1982, 42 U.S.C. §§ 47101-47131 (2004) ("AIAA"), the Airport Noise and Capacity Act of 1990, 49 U.S.C. §§ 47521-47533 (2004) ("ANCA"), and state law" and sought damages pursuant to § 1983. Id. The district court held that the constitutional claims were frivolous, but, because the AAIA and ANCA claims were issues of first impression, they were not. Id.

The Ninth Circuit affirmed and held that because the

constitutional claims were sufficiently distinct from the statutory claims, the district court could weigh and assess the fees attributable to the frivolous claims.  <u>Id.</u> at 1064.  The Supreme Court's dicta in <u>Hensley</u> supports this approach as well. The Supreme Court noted that a defendant may recover attorneys' fees incurred in responding to an unsuccessful claim if that claim is frivolous.[1/]  <u>See</u> <u>Hensley</u>, 461 U.S. at 435 n.10.

## II.  Rule 11 Sanctions

Federal Rule of Civil Procedure 11 permits a court to impose sanctions upon attorneys, law firms, or parties that violate (or are responsible for a violation of) the rule's requirements regarding representations to the court.  <u>See</u> Fed. R. Civ. P. 11(c).  In pertinent part, Rule 11 prohibits lawyers from filing papers with the court that are: (1) "presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the costs of litigation," or (2) not "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law."  <u>See</u> Fed. R. Civ. P. 11(b)(1)-(2); <u>United National Insurance Co. v. R & D Latex Corp.</u>, 242 F. 3d 1102, 1115 (9th Cir. 2001).

---

[1/]  The Ninth Circuit in <u>Tutor-Saliba</u> left open the question of whether a district court may award partial attorney's fees if the frivolous claims are combined with nonfrivolous claims and the claims are not sufficiently distinct.  <u>Tutor-Saliba Corp.</u>, 452 F. 3d at 1064 n.4.

Two competing considerations underlie Rule 11.  On one hand, attorneys occasionally "engage in litigation tactics so vexatious as to be unjustifiable even within the broad bounds of our adversarial system, and . . . neither the other parties nor the courts should have to abide such behavior or waste time and money coping with it."  <u>United National Insurance Co.</u>, 242 F.3d at 1115.  On the other hand, "our system of litigation is an adversary one, and . . . presenting facts and law as favorably as fairly possible in favor of one's client is the nub of the lawyer's task."  <u>Id.</u>  Accordingly, judges "should impose sanctions on lawyers for their mode of advocacy only in the most egregious situations, lest lawyers be deterred from vigorous representation of their clients."  <u>Id.</u>

Among other grounds, a district court may impose Rule 11 sanctions if a paper is filed with the court for an improper purpose, or if the paper is frivolous.  <u>See</u> <u>G.C. and K.B. Investments, Inc. v. Wilson</u>, 326 F.3d 1096, 1109 (9th Cir. 2003); <u>Townsend v. Holman Consulting Corp.</u>, 929 F.2d 1358, 1362 (9th Cir. 1990).  An "improper purpose" is a purpose to "harass or to cause unnecessary delay or needless increase in the cost of litigation."  Fed. R. Civ. P. 11(b)(1); <u>see also</u> <u>G.C. and K.B. Investments, Inc.</u>, 326 F.3d at 1110.  A "frivolous" filing is one that is "both baseless and made without a reasonable and competent inquiry."  <u>Townsend</u>, 929 F.2d at 1362.

"The standard governing both the 'improper purpose' and 'frivolous' inquiries is objective." G.C. and K.B. Investments, Inc., 326 F.3d at 1109 (citing Townsend, 929 F.2d at 1362). Thus, a person's subjective intent to file a meritorious document is of no consequence; a person's conduct is tested against the conduct of a reasonable man, who is a competent attorney admitted to practice before the district court. G.C. and K.B. Investments, Inc., 326 F.3d at 1109 (quoting Zaldivar v. City of Los Angeles, 780 F.2d 823, 830 (9th Cir. 1986)).

Subsection (c) of Rule 11 imposes limitations on the nature of the sanctions imposed and how those sanctions may be initiated. See Fed. R. Civ. P. 11(c).

**III. Objections to The Special Master's Report**

The Special Master's Report recommends awarding Defendant Chinen $20,793.75 in attorney's fees pursuant to 42 U.S.C. § 1988 and sanctioning Plaintiff's counsel $1500.00 to be paid to the Court. Special Master's Report at 2. Both Plaintiff and Defendant Chinen have objected to the Special Master's Report.

Although Plaintiff's counsel appears focused on the recommendation regarding sanctions, Plaintiff's Motion for Reconsideration moves "the Court to find that Plaintiff did argue for a reasonable extension of law per Rule 11(b)(2) and (c)(5), that Plaintiff had a factual basis, and therefore Plaintiff's

13

case was not frivolous and thus <u>he or his attorney owes Defendant</u>

<u>Chinen no fees or fines</u>."[2]  Mot. for Reconsideration at 1-2

(emphasis added).[3]  Specifically, Plaintiff asserts "[t]he Court

NEVER considered Plaintiff's legal arguments that refusing to

---

[2]  In light of the Ninth Circuit precedent regarding claims, the Court notes that Plaintiff's NAGPRA claim is irrelevant to a determination of whether Plaintiff's First Amendment retaliation claims are frivolous.  The Court thus disregards Plaintiff's assertion that he "prevailed at trial on the liability for the NAGPRA claim," which, in any event, is incorrect.  <u>See</u> Plaintiff's Obj. at 15.  This Court found the State Defendants were entitled to judgment on the NAGPRA claim.  <u>See</u> Findings of Fact and Conclusions of Law and Decision as to Plaintiff's NAGPRA claim, dated November 13, 2009.  Doc. No. 258.

[3]  As discussed earlier, Plaintiff filed a Motion to Reconsider Report of Special Master on Defendant Melanie Chinen's Motion for Award of Attorney's Fees and Motion for Sanctions Pursuant to FRCP 11 and a memorandum in support.  Plaintiff also asserts in his response that "Sanctions under 28 U.S.C. § 1988 are only available to a Defendant if the cause of action was frivolous.  Thus argument concerning the error of Rule 11 sanctions directly support the argument of the 28 U.S.C. § 1988 fees [sic]."  Plaintiff's Response at 3.  Defendant Chinen argues "Plaintiff makes no objections or argument whatsoever as to the special master's recommendation that fees be awarded against him pursuant to 42 U.S.C. § 1988."  Defendant's Response at 2.  The Court agrees that Plaintiff's Objections do not make any arguments specifically directed to the award of fees pursuant to § 1988.  However, in light of Plaintiff's generalized assertions that its arguments regarding Rule 11 sanctions are applicable to § 1988, the fact that this Court must review portions of the Special Master's Report that are objected to de novo, and the fact that under both § 1988 and Rule 11 the Court must look at whether a claim or argument is frivolous, the Court will review whether the award of attorneys' fees is appropriate.  The Court considers Plaintiff's argument that Plaintiff's claims and arguments were not frivolous under Rule 11 to be applicable to § 1988 as well.  The Court further notes that Plaintiff would have done well to be more explicit in its arguments in support of its assertion that no attorneys' fees should be awarded pursuant to § 1988 against either Plaintiff or Plaintiff's counsel.

participate in violating laws is a different sort of speech still protected by the First Amendment even if you tell it to your boss; and 2) [sic] that if one only has a named position, but not the authority to actually do that job, then one is still protected by the First Amendment even if the job is a legal advisor."  Plaintiff's Obj. at 4.

On the other hand, Defendant Chinen also objects to the Special Master's Report.  Defendant Chinen asserts that "the master erred in determining that Ms. Chinen should be awarded only 25% of fees from filing of the TAC through August 20, 2009, and 50% of fees thereafter."  Defendant's Obj. at 2, 4-6 (citing Special Master Report at 34).  Defendant Chinen further objects to the Special Master's Report arguing, "the master erred in determining it was not frivolous to allege that certain statements formed a basis for his non renewal."  See Defendant's Obj. at 2, 3-4 (citing the Special Master Report at 22-25).  Finally, Defendant Chinen objects to the Special Master's Determination that an appropriate FRCP 11 sanction is payment of $1500 to the Court.  See Defendant's Obj. at 2. 6-8.

## IV.  Analysis

The Court adopts the Special Master's Report in its entirety.  The Court finds that the Special Master's Report is well-reasoned and extremely thorough.  The Special Master found that, based upon this Court's analysis in the Summary Judgment

Order:

> the statements that Plaintiff based his First Amendment retaliation claim in the TAC upon can be divided into three categories: 1) statements that Plaintiff made as a public employee; [Summary Judgment Order at 9-20;] 2) statements that Plaintiff made after Chinen decided not to renew Plaintiff's contract; [id. at 20-22;] and 3) statements that Plaintiff made before Chinen's decision but which she was unaware of when she made the decision. [Id. at 22-28.]

Special Master's Report at 17-18.  The Special Master then further divided the first category into two subcategories and determined whether each of the four categories warranted an award of attorney's fees and sanctions.  This Court likewise will review Plaintiff's First Amendment retaliation claims based upon each of these categories of statements, and whether attorney's fees and sanctions are warranted based upon each of these categories.

Plaintiff's Third Amended Complaint was lengthy and detailed.  In drafting the allegations in his Third Amended Complaint, Plaintiff had the benefit of two prior orders granting motions to dismiss.  Given this background, the Court finds that each category of statements is sufficiently separate and distinct such that the Court can analyze whether the First Amendment retaliation claim based upon each category is frivolous.  Cf. Tutor-Saliba Corp, 452 F.3d at 1062-63 (finding claims were sufficiently distinct to determine that constitutional claims were frivolous but statutory claims were not).

16

    1.   <u>Statements at Meetings Pursuant to Plaintiff's</u>
<u>Official Responsibilities</u>

First, the Special Master examined Plaintiff's First Amendment retaliation claim based upon statements made at two meetings, at which Plaintiff later acknowledged he spoke pursuant to his official responsibilities.  Special Master's Report at 18 (citing Chinen's Amended Separate & Concise Statement of Facts in Supp. of Chinen's Motion for Summary Judgment ("Chinen Am. CSF"), filed Aug. 18, 2009 (doc. no. 165) at ¶¶ 10, 14; Pltf.'s Separate Concise Statement of Facts in Supp. of Pltf.'s Mem. in Opp. to Chinen's Motion for Summary Judgment ("Pltf. CSF") at ¶¶ 10, 14).

"The first meeting occurred on September 28, 2005 and concerned improvements at Kawaihae Harbor for the 'Superferry.' [TAC at] ¶¶ 31-37.  Plaintiff spoke at the meeting as a representative of the SHPD."  Summary Judgment Order at 16 (internal citation omitted).  Plaintiff also spoke at a second meeting on October 5, 2005 in his capacity as Branch Chief Archeologist.  Summary Judgment Order at 16-17 (citing TAC ¶¶ 38-41; other citations omitted).

The Court agrees with the Special Master that <u>Brown II</u> "clearly put Plaintiff on notice that statements he made pursuant to his job responsibilities are not protected by the First Amendment."[4/]  Special Master's Report at 19 (citing <u>Brown II</u>,

_____

[4/] The Court thus rejects Plaintiff's argument that "the
(continued...)

2009 WL 330209, at *7).  The Court further agrees that "[t]he TAC's description of the statements Plaintiff made at these meetings clearly indicates that Plaintiff spoke at the meetings pursuant to his official duties."  Id. at 20.  Therefore, the Court concludes, as did the Special Master, that

> [b]ased on [this Court's] rulings in Brown II and the allegations in the TAC, it was obvious that, when he filed the TAC, Plaintiff's First Amendment retaliation claim was wholly without merit to the extent that it was based upon statements that he made as a public employee pursuant to his official responsibilities because such statements are not protected by the First Amendment.

Id. at 21.  Accordingly, this Court finds that Plaintiff's First Amendment retaliation claim based on Plaintiff's statements at the September 28, 2005 Kawaihae Harbor meeting and the October 8, 2005 Society of Hawaiian Archeology meeting is a distinct claim, which is frivolous.  Plaintiff's First Amendment retaliation claim based upon these statements is frivolous because it is wholly without merit.  Plaintiff had been put on notice by this Court's earlier orders that Plaintiff's statements at these meetings were made within the scope of Plaintiff's job responsibilities and were thus not protected.  Indeed, Plaintiff even later acknowledged that he spoke at these meetings pursuant to his official responsibilities.  See Special Master's Report at 18.  Thus, the Court grants Chinen's request for attorney's fees

---

[4]/(...continued)
Court is wrong in this point."  Plaintiff's Obj. at 11.

related to the retaliation claim based on these statements from the filing of the TAC.

The Court also agrees with the Special Master that sanctions are appropriate because:

> {I}nsofar as the facts and legal analysis necessary to evaluate this portion of the retaliation claim were readily available when Plaintiff filed the TAC . . . Plaintiff's counsel failed to conduct a reasonable and competent inquiry before signing and filing the TAC. Plaintiff's retaliation claim was not warranted by existing law or by a nonfrivolous argument for the extension, modification or reversal of existing law, or for the establishment of new law.

Special Master's Report at 22.

Plaintiff contends that he "was arguing per Rule 11(c)(5) for 'argument for extending, modifying, or reversing existing law or for establishing new law.'" Plaintiff's Obj. at 1.[5/]   Plaintiff asserts that:

> In its February 26, 2010 order, the Court did not once consider Plaintiff's new legal arguments.  Nor did the Court consider the September 5, 2009 reconsideration of the Court's May 14, 2008 and February 10, 2009 orders which was subsumed in [sic] during the oral argument of Chinen's Summary Judgment[.]  Plaintiff argued two

---

[5/] Plaintiff also appears to vaguely assert that Defendant's motion for sanctions is too late.  See Plaintiff's Obj. at 5 (citing Prosser v. Prosser, 186 F.3d 403, 405 (3d Cir. 1999), which held that sanctions had been improperly delayed.)  The Court rejects this argument.  Plaintiff filed the Third Amended Complaint on March 12, 2009.  Doc. No. 98.  Defendant filed her motion for summary judgment on June 15, 2009. Doc. Nos. 125 & 126.  On June 22, 2009 she served an unfiled copy of the Rule 11 motion on Plaintiff.  Defendant's Response at 9.   Defendant filed the Rule 11 Motion on September 28, 2009.  Doc. No. 208.  Thus, there was no undue delay and Plaintiff was given more than the required twenty-one day notice period.

> legal theories: First, that Brown only had the position
> and thus [sic] not the authority and thus his
> conversations with Chinen were protected by the First
> Amendment: Second, Plaintiff did not just speak his
> opinion, but refused to participate in personally to
> violate laws. [sic] Refusing to participate rather than
> just opining is an extension of existing law.

Plaintiff's Obj. at 5; see also id. at 10; id. at 4 (arguing

"[t]he Court NEVER considered Plaintiff's legal arguments that

refusing to participate in violating laws is a different sort of

speech still protected by the First Amendment even if you tell it

to your boss; and 2) [sic] that if one only has a named position,

but not the authority to actually do that job, then one is still

protected by the First Amendment even if the job is a legal

advisor.").

    The Court is not persuaded by this argument.  The only

citation Plaintiff provides in support of the assertion that he

argued for an extension of existing law does not demonstrate that

Plaintiff argued for such an extension.  See Plaintiff's Obj. at

10.  As Defendant notes, the passage Plaintiff cites specifically

claims that Plaintiff was fired because he talked about refusing

to violate the law, not that he refused to violate the law which

was the protected speech.  See Defendant's Response at 3.

    Plaintiff made virtually verbatim the same unsupported

argument in his opposition to the Fees Motion before the Special

Master.  See Doc. No. 263 at 8 (asserting that "Plaintiff argued

that part of his protected speech was not just voicing his

opinion about the illegal laws, but refusing to personally

violate those laws, which is an extension of existing law").

Plaintiff does not cite any support for the assertion that he has

ever made this argument prior to asserting it in his opposition

to the Fees Motion and, upon its own review of Plaintiff's

September 5, 2009 Motion for Reconsideration of the Court's May

14, 2008 and February 10, 2009 orders and Plaintiff's Opposition

to Defendant's Motion for Summary Judgment, the Court has found

no evidence of such an argument.[6]  Thus, it was not improper for

the Special Master to find that this "argument" was not a bar to

the imposition of sanctions.  Plaintiff was required to make a

nonfrivolous argument for extending the law; he has not shown he

made any argument, much less that it was nonfrivolous.

    In light of these conclusions, the Court agrees with

---

[6] The Court notes that in his Motion for Reconsideration filed September 05, 2009, Plaintiff did argue that he "only had the name of Chief Archeologist, not the authority.  Thus Plaintiff's speaking out on violations of law was not part of his job."  Mem. in Support of Mot. for Reconsideration of Judge Kay's May 14, 2008 and February 10, 2009 Orders in Regards to the Factual Determination that Exhibit 99 Accurately Described Plaintiff's Job at SHPD, filed Sept. 06, 2009.  Doc. No. 188.  However, Plaintiff is not arguing for the extension of any law (and, indeed, he does not cite any case law).  Rather, he is making the factual argument that certain activities were not within his job responsibilities.  This factual argument does not affect the Court's prior determination that statements made at the meetings were made pursuant to his job responsibilities.  Furthermore, as discussed infra, this Court did examine the scope of Plaintiff's job responsibilities and, on that basis, the Court does not find Plaintiff's claims frivolous.  See infra Section IV. 2.

the Special Master's finding that "the signing and filing of the TAC, to the extent that the First Amendment retaliation claim was based on Plaintiff's statements at the September 28, 2005 meeting and the October 8, 2005 meeting, violated Rule 11(b)(2) and that sanctions are warranted against Plaintiff's counsel pursuant to Rule 11(c)(1)." Special Master's Report at 22. The Court therefore orders Mr. Beatty to pay a $500.00 penalty to the district court for this violation. The Court agrees with the Special Master that this sanction is sufficient to deter Mr. Beatty from filing similar frivolous claims on behalf of his clients and to deter comparable conduct by other similarly situated attorneys. See Fed. R. Civ. p. 11(c)(4).

The Court rejects Defendant Chinen's objections to the amount of this sanction. See Defendant's Obj. at 6-8. Defendant Chinen argues that "[i]n fact, plaintiff's attorney is demonstrably not deterred. First, plaintiff, through his same attorney, is pursuing this matter on appeal." Defendant's Obj. at 7. The Court is not persuaded by this objection. Mr. Beatty filed a notice of appeal prior to the issuance of the Special Master's Report. Although Defendant Chinen had already provided him with notice of her Rule 11 Motion and had filed the Fees and Rule 11 Motions, the Special Master had not yet recommended that Mr. Beatty be sanctioned. The Court, however, expects that the sanctions issued will deter Mr. Beatty from similar conduct in

the future.[7/]

The Court also rejects Defendant Chinen's argument that "it is far fairer and more appropriate for the same fees to be awarded against the attorney as are awarded against the client." Defendant's Obj. at 7.  The Court notes that § 1988 provides for an award of attorney's fees to the prevailing party and case law has established the circumstances for such an award.  Although Rule 11(c)(4) allows for an order "directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation," the Court finds that such an award is not "warranted for effective deterrence" here.  See Fed. R. Civ. P. 11(c)(4).  Given the objection of Mr. Beatty to the Special Master's Report focused almost entirely on the sanctions the Special Master proposed awarding, the Court believes that a $500 sanction against Mr. Beatty for each violation will serve as a sufficient deterrent to Mr. Beatty and will deter comparable conduct by other similarly situated attorneys.  See Fed. R. Civ. P. 11(c)(4).

---

[7/] Defendant Chinen also argues that Plaintiff is not deterred because he continues to advance the notion that he is the prevailing party and because is pursuing the claim in state court.  In response to these objections, the Court notes that sanctions have been recommended but they have not yet been formally imposed upon Mr. Beatty, which may account for the lack of deterrence.  Additionally, these sanctions are not, in any event, related to Mr. Beatty's continued, yet misplaced, persistence that he is the prevailing party on the NAGPRA claim.

    2.   Other Statements Made Pursuant to Plaintiff's
         Official Duties

    Second, the Special Master examined Plaintiff's other
complaints about allegedly illegal practices which involved
objections to Chinen's decisions on development projects, such as
the issuance of permits.  See Special Master's Report at 23
(citing Summary Judgment Order at 17-18).  Plaintiff also
"objected when Chinen 'coerced' him to represent her, the SHPD,
and the State in matters pertaining to the [Walmart] project."
Id. (citing Summary Judgment Order at 20.)

    In opposing Summary Judgment, Plaintiff contested the
scope of his duties.  This Court ultimately rejected that
argument.  However, because the scope of a person's job
responsibilities can raise factual issues, the Court does not
find that Plaintiff's TAC based upon those statements was
groundless, without foundation, frivolous, or unreasonable.  See
Special Master's Report at 24; Summary Judgment Order at 18-20.
Accordingly, the Court denies attorney's fees in relation to this
portion of Plaintiff's First Amendment retaliation claim.[8/]  The

_____

    [8/] Thus, Plaintiff's Objection that "Both in this
reconsideration, and during oral argument of Chinen's Summary
Judgment, Plaintiff argued: 'Plaintiff asserts that Chinen
repeatedly undermined his authority, such that the contours of
his official duties are unclear" (Plaintiff's Obj. at 10) is
moot.  The Court's Summary Judgment Order did consider that
argument and examined the scope of his responsibilities, and the
Special Master concluded that Plaintiff's First Amendment
retaliation claim based on certain statements was not frivolous
                                                (continued...)

Court rejects Defendant Chinen's argument with respect to this
finding.  See Defendant's Obj. at 3-4.  Although the Court had
previously concluded at the Motion to Dismiss stage that the
comments Brown made to Chinen were within the scope of his
duties, Plaintiff contested that determination at the summary
judgment stage and the scope and content of a plaintiff's job
responsibilities is a question of fact.  See Summary Judgment
Order at 13; see also Jensen v. Las Vegas Metro. Police Dep't,
350 F. Appx. 115, 119 (9th Cir. 2009) (reversing a district
court's determination that plaintiff's First Amendment claim was
frivolous and "wholly without merit" because the "law on First
Amendment retaliation claims is not completely settled,
particularly on the question of how to determine when a public
employee is speaking pursuant to an official duty rather than as
a private citizen.").  Thus, these statements differ from the
statements at the two meetings, which Plaintiff conceded he made
as an employee.

　　　　Because the Court has found that the First Amendment
claim based upon these statements is not frivolous, the Court
finds that sanctions are not warranted.

　　　　　　　　3.    Statements After Chinen's Decision

　　　　The third category of statements upon which Plaintiff

---

(...continued)
because of the Court's analysis.

alleges Chinen and the State violated his First Amendment rights
are critical statements Plaintiff allegedly made about SHPD to a
union representative, the Hawai'i Legislature, and Robert
Matsuda.  See Special Master Report at 25 (citing TAC at ¶¶ 48-
50, 144, 150).  The Court agrees with the Special Master's
reasoning that

> The TAC itself states that Plaintiff made the
> statements to the Legislature and Mr. Matsuda after his
> termination date. [TAC at ¶¶ 144, 150.] When he
> responded to Chinen's Motion for Summary Judgment,
> Plaintiff acknowledged that he made the statements to
> the union official after his termination date.
> [Chinen's Amended Separate & Concise Statement of Facts
> in Supp. of Chinen's Motion for Summary Judgment
> ("Chinen Am. CSF"), filed 8/18/09 (dkt. no. 165) at ¶
> 23; Pltf.'s Separate Concise Statement of Facts in
> Supp. of Pltf.'s Mem. in Opp. to Chinen's Motion for
> Summary Judgment ("Pltf. CSF") at ¶ 23.] The district
> judge therefore found that these statements could not
> have been substantial or motivating factors in Chinen's
> decision not to renew Plaintiff's contract. [Summary
> Judgment Order at 22.]

Special Master's Report at 26-27.  The Special Master further
explained that this Court had clearly put Plaintiff on notice
that statements made after Chinen's decision not to renew
Plaintiff's contract could not support a First Amendment
retaliation claim.  See id.; see Brown II, 2009 WL 330209, at *12
(internal citations omitted).  In Brown II, this Court noted:

> There also appears to be a factual question as to
> whether Plaintiff's statement to Matsuda was a
> substantial or motivating factor in the decision not to
> renew his employment. The Second Amended Complaint
> alleges that the statement occurred during Plaintiff's
> union grievance period. (2d Am. Compl. ¶ 96.) It does
> not allege when that period occurred, but it would be

26

> logical for that period to have occurred after
> Plaintiff learned that his employment was not renewed,
> such that he could assert a grievance as to that
> decision.

Brown II at *11 n.2.  Furthermore, in granting Plaintiff leave to amend, the Court explained: "This Court assumes that, if Plaintiff agrees that his statements to Matsuda and the legislature were made after the decision not to renew his employment, he will not premise his First Amendment retaliation claim upon those statements." Id. at *19; Special Master's Report at 26-27.

The Court further agrees with the Special Master that it was obvious from the filing of the TAC that Plaintiff's First Amendment retaliation claim was wholly without merit to the extent it was based upon statements the Plaintiff made after Chinen had already decided to not renew Plaintiff's contract.  It is impossible for statements made after the decision not to renew his contract to have been substantial or motivating factors in that decision.  Furthermore, Plaintiff was on notice that if those statements were made after the decision to terminate him had been made, he should not premise his First Amendment retaliation claim upon those statements.  As a result, Plaintiff's First Amendment retaliation claim was frivolous to the extent it was based on Plaintiff's statements to a union representative, Plaintiff's statements before the Hawai'i Legislature, and Plaintiff's statements to Robert Matsuda, which

were all made after the decision not to renew his employment had been made.  Because the First Amendment retaliation claim based upon these statements was frivolous at the time the TAC was filed, the Court awards attorney's fees from the filing of the TAC.

Additionally, because it was impossible for these statements to be a substantial or motivating factor in the employment decision, and because the Court had made Plaintiff aware that he could not base his claim on such statements, the Court finds that the retaliation claim based upon these statements was legally and factually baseless from an objective standard.  Further, insofar as the facts and legal analysis necessary to evaluate this retaliation claim were readily available when Plaintiff filed the TAC, the Court finds that Plaintiff's counsel failed to conduct a reasonable and competent inquiry before signing and filing the TAC.  The Court finds that Plaintiff's First Amendment retaliation claim on this basis was not warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law, or for the establishment of new law.  Therefore, the Court finds that, to the extent that the TAC asserted a First Amendment retaliation claim based upon statements made after the decision not to renew his contract had been made, the signing of the TAC violated Rule 11(b)(2).  Because of this violation, a sanction of $500 against

Mr. Beatty, to be paid to the district court, is appropriate.
The Court believes that such a sanction will suffice to deter Mr.
Beatty from filing such frivolous claims and to deter comparable
conduct by other similarly situated attorneys.

      4.   <u>Statements Which Chinen Was Not Aware Of</u>

      The final category of statements which the Special
Master examined are statements this Court had ultimately found
Chinen was not aware of when she decided not to renew Plaintiff's
contract.  <u>See</u> Special Master's Report at 29.  These statements
are

> statements regarding unethical and illegal practices at
> the SHPD to: (1) an auditor from a private accounting
> firm that was performing an audit of the SHPD; (2) a
> co-worker by the name of Sunny Greer; (3) individuals
> in a leadership class he took at the University of
> Hawai'i; (4) "[v]arious people in the community" and
> "many friends"; and (5) Dr. John Peterson, a former
> member of the advisory council on Historic
> Preservation.

<u>Id.</u> (citing Summary Judgment Order at 22 (citing TAC at ¶¶ 42 47,
51-59, 105-06, 143, 152, 153)) (alteration in Summary Judgment
Order).  As the Special Master noted, in opposition to Chinen's
Motion for Summary Judgment, Plaintiff conceded that he did not
have any direct evidence showing that Chinen was aware of these
statements when she decided not to renew his contract.  <u>See</u> <u>id.</u>
(citing Summary Judgment Order at 22 (citing Chinen's Mot. Am.
CSF ¶¶ 21, 26, 29-30, 34, 37; Pl.'s Opp'n CSF ¶ ¶ 21, 26, 29-30,
34, 37)).  Plaintiff also acknowledged that he made these

statements under circumstances such that he did not believe the people he made them to would relay the statements to Chinen.  <u>Id.</u> Instead, Plaintiff asserted that there was a reasonable inference that Chinen knew about the statements based on her memorandum regarding the June 1, 2006, meeting.  <u>Id.</u>

Plaintiff argues that, based upon the statements in the June 1, 2006, memorandum, he expected certain facts to materialize during discovery.  <u>See</u> Plaintiff's Obj. at 17 ("[i]t was not until the Spring and Summer of 2009 until [sic] Plaintiff was able to make his inquiry to see if the expected facts were there.")  However, as Plaintiff admits, the "expected facts" did not materialize.  <u>See</u> <u>id.</u> ("[T]hough Plaintiff did not discover speech spoken to others that eventually was told to Chinen . . . .");  <u>see also</u> Special Master's Report at 30-31 (discussing the absence of support for Plaintiff's claims based upon these statements).  Once those facts did not materialize and discovery closed, it became frivolous for Plaintiff to continue to pursue his First Amendment retaliation claim based upon those expected facts.

Plaintiff's continued reliance on the June 1, 2006 memorandum is misplaced.  <u>See</u> Plaintiff's Obj. at 7, 11.  As the Special Master noted, this Court explained in <u>Brown II</u> that "it would be unreasonable to infer that Chinen was aware of Plaintiff's complaints to his friends regarding illegal practices

in light of her June 1, 2006 statement, because Chinen's
statement concerned not the SHPD's illegal practices, but rather
Plaintiff's changing policy singlehandedly." Brown II at 29 n.
3; Special Master's Report at 31.

Thus, once it became apparent that the only evidence
Plaintiff had to establish Chinen's pre-decision knowledge of his
statements to the auditor, the leadership class, his friends and
community members, and Dr. Peterson was the June 1, 2006,
memorandum, it was obvious that Plaintiff's First Amendment
retaliation claim was frivolous and wholly without merit as to
those statements because this Court had already ruled that the
memorandum alone was insufficient. The Court therefore grants
Defendant Chinen § 1988 attorney's fees from the close of
discovery for the First Amendment retaliation claim based upon
these statements.

The Court also finds that Plaintiff's continued
litigation of these claims after the end of discovery and without
any evidentiary support violates Rule 11(b)(3) and thus,
sanctions are warranted against Plaintiff's counsel pursuant to
Rule 11(c)(1). The Court orders Mr. Beatty to pay a $500.00
penalty to the district court. This Court finds that this
sanction is sufficient to deter Mr. Beatty from continuing to
litigate claims without evidentiary support and to deter
comparable conduct by other similarly situated attorneys. See

Fed. R. Civ. P. 11(c)(4).

    5.   Calculation of Attorney's Fee Award

        Under federal law, reasonable attorney's fees are generally based on the traditional "lodestar" calculation set forth in Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  See Fischer v. SJB-P.D., Inc., 214 F.3d 1115, 1119 (9th Cir. 2000). The Court must determine a reasonable fee by multiplying "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate."  Hensley, 461 U.S. at 433.  Second, the Court must decide whether to adjust the lodestar amount based on an evaluation of the factors articulated in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir. 1975), which have not been subsumed in the lodestar calculation.  See Fischer, 214 F.3d at 1119 (citation omitted).

        The factors the Ninth Circuit articulated in Kerr are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys [sic], (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

Kerr, 526 F.2d at 70.  Factors one through five have been subsumed in the lodestar calculation.  See Morales v. City of San

32

Rafael, 96 F.3d 359, 364 n.9 (9th Cir. 1996).  Further, the Ninth

Circuit, extending City of Burlington v. Dague, 505 U.S. 557, 567

(1992), held that the sixth factor, whether the fee is fixed or

contingent may not be considered in the lodestar calculation.

See Davis v. City & County of San Francisco, 976 F.2d 1536, 1549

(9th Cir. 1992), vacated in part on other grounds, 984 F.2d 345

(9th Cir. 1993).  Once calculated, the "lodestar" is

presumptively reasonable.  See Pennsylvania v. Delaware Valley

Citizens' Council for Clean Air, 483 U.S. 711, 728 (1987); see

also Fischer, 214 F.3d at 1119 n.4 (stating that the lodestar

figure should only be adjusted in rare and exceptional cases).

        Defendant requested a lodestar award of $79,475.00

based upon 317.9 hours of work at a rate of $250 an hour.  The

Special Master concluded that the requested hourly rate of $250

was manifestly reasonable.  Special Master's report at 37-38.

However, she adjusted the reasonable hours expended to 274.7.

See id. at 40-41.  Thus, the Special Master came up with a

lodestar of $54,175.00 for work from the filing of the TAC on

March 12, 2009, up to August 20, 2009, and $14,500.00 for work

after August 20, 2009.  Id. at 41.  The Special Master then

modified the lodestar to award 25% of the fees from the filing of

the TAC through August 20, 2009 ($13,543,75), and 50% of fees

after the close of discovery on August 20, 2009 ($7,250.00), for

a total award of $20,793.75.  Id.

Defendant Chinen accepts the adjustments made to the
number of hours submitted by Defendant's attorney and accepts the
finding of a total lodestar of $68,675.00.  <u>See</u> Defendant's Obj.
at 5-6.  However, Defendant Chinen objects to the "drastic
reduction" in the amount of the lodestar proposed (i.e. the award
of 25% from the filing of the TAC to the close of discovery and
50% thereafter).  <u>Id.</u> at 5.  Defendant Chinen asserts that the
Special Master's Report "provides no explanation whatsoever for
the drastic reduction proposed" and argues that "the absence of a
reason is itself clear error."  <u>Id.</u>  Although this Court agrees
that the Special Master was not as explicit as she could have
been in clarifying her reasoning for the awards of 25% and 50%,
the Court concludes that the proposed reductions are valid and
supported by the overall discussion of attorney's fees contained
within the Special Master's Report and the time sheets submitted
by Defendant Chinen's counsel.

In this case, the lodestar must be adjusted because
there are numerous separate and distinct bases for Plaintiff's
First Amendment retaliation claim.  As discussed above, this
Court has found some of those bases were frivolous from the
filing of the TAC, some were frivolous once discovery ended, and
some were not frivolous at all.  In awarding a prevailing
plaintiff fees, the Supreme Court has held that "the extent of a
plaintiff's success is a crucial factor in determining the proper

34

amount of an award of attorney's fees under 42 U.S.C. § 1988."

See Hensley, 461 U.S. at 440.  The Supreme Court has also held

that "where Plaintiff achieved only limited success, the district

court should award only that amount of fees that is reasonable in

relation to the results obtained."  Id.  Analogously, if a

defendant is entitled to fees because some of a plaintiff's

claims are frivolous, the Court must consider the extent to which

a plaintiff's claims were frivolous in awarding attorney's fees

to a defendant.  See Tutor-Saliba, 452 F.3d at 1064 (concluding

that "the district court was in a position to properly weigh and

assess the amount of fees attributable to Tutor's frivolous

claims.")

Given the relative factual issues and legal

complexities involved in analyzing Plaintiff's First Amendment

retaliation claim based on each of the categories discussed

above, the Court agrees with the Special Master.  25% of

attorney's fees from the filing of the TAC to the end of

discovery, and 50% of attorney's fees after the close of

discovery, is reasonable and appropriate.  The Court has found

that Plaintiff's statements at the September 28, 2005, Kawaihae

Harbor meeting and the October 8, 2005, meeting, as well as

statements made after Chinen's decision not to review Plaintiff's

contract were frivolous from the filing of the TAC.  The Court

has also found that statements made to the auditor, Ms. Greer,

the leadership class, his friends and community members, and Dr. Peterson were frivolous from the close of discovery.  Finally, the Court found that Plaintiff's First Amendment claims based upon statements within the course of Plaintiff's official duties, other than the statements at the two meetings, were not frivolous.

The statements that the Court has found were frivolous from the time the TAC was filed were discrete and had already been mentioned by this Court in its previous orders.  Thus, the Court concludes that awarding 25% of fees from the filing of the TAC to the close of discovery is a reasonable amount.  The award of only 25% is reasonable because, as the Court has noted, Plaintiff's statements to the auditor, Ms. Greer, the leadership class, his friends and community members, and Dr. Peterson were not frivolous until the close of discovery.  Moreover, Plaintiff's First Amendment claims based upon statements this Court found to be within the course of Plaintiff's official duties, other than the statements at the two meetings, were never frivolous.  Thus, discovery on both of those substantial categories of statements was necessary and would have been necessary even had Plaintiff's TAC not included the frivolous First Amendment retaliation claims based upon the statements made at the two meetings or the statements made after Chinen's decision not to renew his employment.  A review of the time

36

sheets submitted by Mr. Wynhoff reinforces this conclusion.  See Doc. No. 207-4.  Mr. Wynhoff would still have had to review documents, attend depositions, and prepare a summary judgment motion even if those claims had not been made.

For similar reasons, the Court concludes that the award of 50% of attorney's fees after the close discovery is appropriate.  After eliminating the first two categories of statements which were found to be frivolous from the filing of the TAC (statements made at the two meetings pursuant to Plaintiff's official duties and statements made after Chinen's decision not to renew his employment), there are two remaining categories of statements upon which Plaintiff's First Amendment retaliation claim was based.  Thus, in concluding that one half of those categories were frivolous after the close of discovery (the category of statements that Plaintiff was unable to establish Chinen was aware of), it is reasonable to award 50% of attorney's fees from that point on.  As discussed above, one of the remaining bases of Plaintiff's First Amendment complaint (statements this Court found to be within the course of Plaintiff's official duties, other than the statements at the two meetings) was not frivolous, therefore defendant's counsel would still have been obligated to see the summary judgment motion through its conclusion.

37

## <u>CONCLUSION</u>

The Special Master's Report is hereby ADOPTED in its entirety.

IT IS SO ORDERED.

DATED: Honolulu, Hawai'i, May 03, 2010.



_____
Alan C. Kay
Sr. United States District Judge

<u>Brown v. Chinen</u>, Civ. No. 07-00570 ACK-LEK: Order Adopting Report of Special Master On Defendant Melanie Chinen's Motion for Award of Attorney's Fees and Motion for Sanctions Pursuant to FRCP 11.